HORATIO R. NIGHTINGALE *vs.* MARY W. PHILLIPS *et al.*

FEBRUARY 7, 1908.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1)  *Wills.   Incorporation of Instrument in Will.*

X. executed the following document, May, 1883:

"DEAR A:— Please get from H. my old will made during E.'s lifetime and destroy it, as I now wish my property to go in the same way as Y. has now arranged for hers to go.   I give to her should she survive me in the same way as she gives to me in her last will.

"Signed 'X.'

" Witness to signature,
     " H. R. N.
     " H. F. N."

Upon petition to the municipal court, representing that X. and Y., sisters, had made wills giving practically all their property each to the other, and owing to changed conditions had determined to make a second will, and revoke the former wills, which Y. did; that X., being then in feeble health, expressed her approval of the will of Y., and sent the document above quoted in accordance therewith;   that before the death of X., in accordance with said request, the will was destroyed, but before the proposed will was prepared for her she died, the court entered decree that said instrument above quoted, as supplemented and explained by the will of Y., be allowed as the will of X.:—

*Held,* that, there being no doubt as to the existence and identity of the instruments which were incorporated by apt words of reference in the paper executed by X. as her will, the papers were properly admitted to probate as her will.

(2)  *Spendthrift Trusts.   Rule in Shelley's Case.*

Testamentary devise to a trustee stating that it was the object of the testatrix to provide for the support and subsistence of X., who was indebted to a greater extent than he was able to pay, provided for the payment of the income to X. during his life, and upon his decease to his heirs in fee, with provision that in case of voluntary or involuntary attempted alienation the interest of X. should cease.   The trustee was empowered, if expedient for the support of X., to sell any portion of the principal:—

*Held,* that, following the rule established by *Bucklin* v. *Creighton,* 18 R. I. 325, X. took only an equitable life interest in the trust estate, and that the rule in equity following the rule in Shelley's case at law did not apply, since spendthrift trusts ought to be considered an exception to that rule.

BILL IN EQUITY for construction of will, certified to Supreme Court under C. P. A. § 338.

DUBOIS, J. This is a bill in equity for the construction of a will, certified by the Superior Court for determination as ready for hearing for final decree, under C. P. A. § 338.

Heard upon bill, answers, and proof.

The complainant, claiming to be trustee under the will of Susan E. Nightingale, desires to terminate the trust and to distribute the trust estate, consisting wholly of personal property, *per stirpes*, among the nephews and nieces and the issue of the deceased nephew of Samuel A. Nightingale, deceased.

The respondents Mary W. Phillips, Annie R. Warren, John T. Nightingale, Nina Nightingale, Elizabeth Nightingale, Frances C. Youlin, Warren R. Perce, surviving executor of the will and codicil of Samuel Arnold Nightingale, Charles T. Aldrich, Henry L. Aldrich, and William T. Aldrich, have been duly served with process, and with the exception of Mary W. Phillips and Annie R. Warren, against whom the bill was taken *pro confesso*, April 16, 1907, have appeared and answered, each of said parties being *sui juris* and of full age excepting the said John T. Nightingale, Nina Nightingale, and Elizabeth Nightingale, who are minors and for whom a guardian *ad litem* has been appointed, and who have answered by their guardian.

Claim is made in behalf of some of the respondents that the papers referred to in the bill, and hereinafter set out, do not purport to be the last will and testament of Susan E. Nightingale; that the action of the Municipal Court of Providence in admitting the same to probate was beyond the power of said court, and unauthorized and void; and that if said papers do constitute the last will of said Susan E. Nightingale, said will merely made a devise to her sister Harriet F. Nightingale for life, and that the supposed trust was not made a part of the will.

Certain other respondents claim, first, that if the probate court had jurisdiction, and the whole of the will of Harriet F. Nightingale was incorporated in the note written by Susan E. Nightingale, then Samuel A. Nightingale took an equitable estate in fee simple under the rule in equity analogous to the rule in Shelley's case at law; and second, if it be held that the probate court had jurisdiction, the only part of the will of Harriet

F. Nightingale that was adopted as the will of Susan E. Night-
ingale was that part giving a life estate to said Harriet F. Night-
ingale, or if it be held that the Probate Court had no juris-
diction at all, then the trust, if one were created, was a trust
created by Samuel A. Nightingale himself, and is to be treated,
not as the will of Susan E. Nightingale, but as the voluntary
act of Samuel A. Nightingale.

The following material facts appear in evidence: In May,
1883, Susan E. Nightingale executed the following document:

"May 1883.

"DEAR ARNOLD:—Please get from Horatio my old will, made
during Edwin's lifetime, and destroy it; as I now wish my
property to go in the same way as Harriet has now arranged
for hers to go.   I give to her, should she survive me, in the same
way as she gives to me in her last will.

SUSAN E. NIGHTINGALE.

"Witness to signature,
        "H. R. NIGHTINGALE, JR.
        "H. F. NIGHTINGALE."

The will of "Harriet" F. Nightingale above referred to reads
as follows:

"Know all Men by these presents
    That I, Harriet Frances Nightingale of Providence in the
State of Rhode Island being of sound and disposing mind and
memory, do make and publish this my last will and testament,
hereby revoking all former wills by me at any time heretofore
made.

"First.   I hereby appoint Horatio R. Nightingale to be
Executor of this my last will, directing him to pay all my just
debts and funeral expenses, and the legacies hereinafter given
out of my estate; and I hereby request that no surety be re-
quired by the Honorable Municipal Court upon his personal
bond.

"Second.   After the payment of my said debts and funeral
expenses, I give to each of my brothers Crawford Nightingale
and Horatio R. Nightingale, and to Horatio R. Nightingale
Trustee, and to each of my nephews and nieces, viz. Mary W.

Phillips, Samuel Crawford Nightingale, Annie Rogers Warren and Horatio R. Nightingale Jr. One hundred dollars to be paid to them respectively as soon after my death as may conveniently be done, or to their heirs at law in case they should not survive me.

"Third. After the foregoing legacies have been paid, I give to my sister Susan E. Nightingale the use, improvement, and income of all the rest and residue of my estate including real, personal and mixed estate, to be by her held, used, occupied and enjoyed during the term of her natural life, she to pay the taxes and assessments of all kinds thereon, and to keep the same in repair, and to pay insurance together with all other necessary expenses connected therewith and appertaining thereto.

"Fourth. And whereas my brother Samuel A. Nightingale gratuitously expended upon real estate belonging to me and my said sister Susan E. located on College street in said Providence a considerable sum of money as a free gift; in consideration thereof, after the death of my said sister Susan E. I give to Horatio R. Nightingale, Trustee, the sum of Two thousand dollars in special trust as per the seventh clause of this will, in addition to what is before and after given him herein.

"Fifth. After the death of my said sister, and the payment of the last named legacy, I give unto each of my said nieces and nephews the further sum of Two thousand dollars to be paid them if living, and in case of the death of either of them leaving a child or children, said child or children to receive the amount that the parent would be entitled to by this will, if living.

"Sixth. All the rest and residue of my estate remaining after the death of my said sister, including all real, personal and mixed estate of whatever description or however located I give devise and bequeath to be equally divided among my said brothers Crawford and Horatio R. and Horatio R. Nightingale Trustee and to their heirs and assigns forever, excepting as to the Trustee portion, which goes under the seventh clause in this will.

"Seventh. My will is that all the gifts, devises and bequests

hereinbefore made to Horatio R. Nightingale Trustee shall be in *Special Trust* to him, his successors, heirs and assigns forever, for the following named uses and purposes. I direct said Trustee and his successor in the trust to pay over to my brother Samuel A. Nightingale as often as once in a year for and during the term of his natural life such sums of money as may be the income or profits in the estate so held in trust. And I further direct said Trustee or his successor in the trust after the decease of said Samuel A. to pay over and convey all the right, title and interest in my said estate which I have given him in trust, to the heir or heirs at law of the said Samuel A. to be held by them in absolute property and fee, disencumbered of this trust, and in such parts and portions as such heir or heirs would be entitled had the estate been vested in him in absolute ownership and fee.

"And whereas the said Samuel A. Nightingale is indebted to divers persons to a greater extent than he is able to pay and my purpose is to provide for his support and subsistence, my will is that if he should sell, encumber, charge or anticipate his right or interest in the rents, income or profits, or if any portion or all of the same shall be sold, disposed of or appropriated by him or under or by virtue of any proceeding in law or equity instituted against the said Samuel A. or against said Trustee or his successor to compel the said Samuel A. to pay all or any portion of his debts, that then the right and interest of said Samuel A. so voluntarily or involuntarily parting in whole or in part with his interest or right in said estate, whether as to the rents, profits or otherwise, his interest shall wholly cease and determine and said Trustee or his successor in said trust shall pay over the rents, profits and income to the heirs at law of said Samuel A. and shall divide the estate in the same proportion and among the same parties that the same would have fallen to had the said Samuel A. been the absolute owner of said property and in fee, and he had deceased.

"Furthermore and to the same end, if at any time during the life of said Samuel A. it may be thought by said Trustee or his successor, expedient in his judgment to sell or dispose of all or any part of the estate, real or personal so given him as

aforesaid in trust, for the support or maintenance of him the said Samuel A., he is hereby empowered and authorized to sell and dispose of the same in part or whole from time to time and to make and execute deeds of the same, and to apply so much and such parts of the principal of such portion so given to him in trust to such maintenance and support as in his discretion shall be deemed proper.

" And I do hereby authorize and empower said Trustee or his successor in the trust, to sell and dispose of all or any part of said estate so given them in trust, for the purpose of reinvesting the proceeds in other property or securities and whether the investment be in personal or real estate.

" In testimony whereof I the said Harriet F. Nightingale have hereunto set my hand and seal to this my last will and testament on this fourteenth day of May A. D. Eighteen hundred and eighty three.

" HARRIET F. NIGHTINGALE    (Seal.)

" Signed, sealed, published and declared by the said Harriet F. Nightingale as and for her last will and testament, in the presence of us who at her request and in her presence, and in the presence of each other have subscribed our names as witnesses hereto.

" JOHN B. KILTON,<br>" EDGAR W. SALISBURY."

Susan E. Nightingale died December 12, 1883, and thereafterwards in the same month the heirs at law and next of kin, together with the legatees named in said will, signed the following petition:

" *To the Hon. Amasa S. Westcott, Judge of the Municipal Court of the City of Providence, in the State of Rhode Island:*

" The undersigned would respectfully represent unto your Honor, that Susan E. Nightingale, *feme sole,* late of said Providence, died on the twelfth day of December 1883, leaving as her heirs at law Crawford Nightingale, of Dorchester, Massachusetts; Harriet F. Nightingale, Horatio R. Nightingale, and Samuel Arnold Nightingale, all of said Providence, they being all the brothers and sisters of the said deceased at the time of

her death, she having never been married and her parents not being alive.

"That said Susan E. left considerable estate both real and personal and no debts or liabilities that have not been paid or provided for.

"That the said Susan E. and the said Harriet F. had lived together many years, on their estate on College street, in said Providence, and had agreed, as is well known by all the family, that each should make a will giving nearly all their property (and excepting only some legacies) each to the other for and during the term of the natural life of each.

"That in carrying out their well known intention both said Harriet F. and Susan E. did on the seventeenth day of May A. D. 1877, make their wills, which were written by John Eddy Esq. and both of the same tenor, and which were copied before execution by their brother Edwin J. Nightingale, then in full life but since deceased, which were counterparts of each other, copies of which are hereunto annexed and are marked A. & B.

"That thereafter on the twentieth day of July, A. D. 1879, their said brother Edwin J. Nightingale, who had been an heir at law of his said sister, died leaving no issue; and that on account of the death of said Edwin J., and the diminished value of the estate of the two sisters, both the said Harriet F. Nightingale and the said Susan E. Nightingale determined to make another and a second will, and to revoke their former wills. And the said Harriet F. on the fourteenth day of May A. D. 1883 made her will a copy of which is hereto annexed marked C. (the original being here in court to be produced).

"That thereafter and about the same time and in the month of May 1883 the said Susan E. Nightingale being in feeble health expressed to her relatives and friends her approval of the will of said Harriet F. and requested her brother Samuel Arnold Nightingale in writing to get from her brother Horatio R. Nightingale her will which she had left with him and desired the said Samuel Arnold Nightingale to destroy the same. The written request, the original of which is here in court to

be produced, was in the words following" (Hereinbefore quoted).

"That thereupon and before the death of said Susan E. the said Horatio delivered to said Samuel Arnold the said will of said Susan E. and the said Samuel Arnold tore up and destroyed the same as requested.

"That afterwards and before said proposed will was prepared for her, she was taken suddenly sick and died of inflamation of the bowels or diarrhœa on the twelfth day of the present month.

"This being the true statement of the facts in the case, we have without reserve and by advice of counsel stated to your Honor all that seems to us important in order that your Honor may take such course as seems to him meet.

"At the same time all of the heirs at law, and the nieces and nephews to whom legacies have been given in said will, prefer and pray that the intention of said Susan E. Nightingale may be respected and carried out, and that the will which was the counterpart of the will of said Harriet F. may be set up, if your Honor is so able to adjudge.

"And all the heirs at law and the legatees under the will hereby express their willingness to waive all their legal rights if said proposed will may be probated, and that they will give any other & further assurances and acquittances as they may be advised are necessary for the proper fulfillment of this their request.

> "HARRIET F. NIGHTINGALE
> "CRAWFORD NIGHTINGALE
> "HORATIO R. NIGHTINGALE
> "SAMUEL A. NIGHTINGALE
> "MARY W. PHILLIPS
> "SAML. C. NIGHTINGALE
> "ANNIE R. WARREN
> "HORATIO R. NIGHTINGALE, JR."

The following application for probate of will was also presented to the Municipal Court of the city of Providence:

"*To the Hon. Municipal Court of the City of Providence, to be Held Jan.* 15, 1884:

"The undersigned herewith presents an instrument of writing purporting to be the Last Will and Testament of Susan E. Nightingale late of said Providence, deceased, and request that the same may be admitted to probate, he being named in said Instrument as the executor thereof.

"Said deceased died at Dorchester, Massachusetts on the twelfth day of December 1884 (1883).

"And he further states to the Court that the personal estate left by said deceased will not exceed $35,000.

"HORATIO R. NIGHTINGALE."

And on the fifth day of February, 1884, the following decree was entered in said Municipal Court:

"STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS, MUNICIPAL COURT OF THE CITY OF PROVIDENCE.
"PROVIDENCE, Feb. 5th, 1884.

"The annexed Instrument of writing as the last Will and Testament of Susan E. Nightingale, late of said Providence, deceased, and by her signed, as supplemented and explained by the paper therein referred to and marked 'Will of Harriet F. Nightingale' was on the fifteenth day of January A. D. 1884 presented for probate and then received and referred to February fifth A. D. 1884 is now read, notice having been duly given pursuant to said order.

"And both the subscribing witnesses to said will, to wit: H. R. Nightingale Junior and H. F. Nightingale were present and having been duly sworn testified that the said Susan E. Nightingale signed the same in their presence and that they respectively signed the same as witnesses in her presence and in the presence of each other and at her request and that she then and there declared the same as and for her last will and testament. And it appearing by the testimony of said H. F. Nightingale that the said instrument hereto annexed called 'Will of Harriet F. Nightingale' is the original paper to which reference is made by the said Susan E. Nightingale in her last

will and that the said papers together constitute and are the last will and testament of said deceased and that the same is legally executed. And it also appearing by the testimony of both the subscribing witnesses aforesaid that the said testatrix at the time of making her said will was of a sane mind and over twenty-one years of age; and no person appearing to object thereto said Instrument is therefore adjudged to be proved, and the same is approved, accepted and allowed, as the Last Will and Testament of said Susan E. Nightingale deceased and it is ordered that as such both of said instruments be recorded.

"And it is further ordered that the accompanying paper marked B be also recorded, as the counterpart of the will of said Harriet and as containing the intention of the will of said deceased.

"GEO. B. NICHOLS,

"*Clerk.*"

No appeal was taken from this decree, and a letter testamentary was thereupon issued to Horatio R. Nightingale as executor of said will. The attested letter of Susan E. Nightingale and "the counterpart of the will of said Harriet" F. Nightingale were duly recorded, but the will of said Harriet was not. It does not appear that the judge or clerk of the Municipal Court, the counsel, or any of the parties, respectively, saw fit to compel the performance of, or to comply with that portion of, the decree which ordered that the will of Harriet F. Nightingale should be recorded. But it does appear in the decree that Harriet testified before the Municipal Court that she was a subscribing witness to the will of Susan E. Nightingale and that her own will (then before that court and now before this court) is the original paper referred to by said Susan in her last will, and the Municipal Court found that said papers together constitute the last will of Susan E. Nightingale. It would serve no useful purpose at this late day to record the will of Harriet F. Nightingale, which could be done, if it was necessary, to perfect the records or to complete a chain of title. The "counterpart" which was recorded was sufficient public notice of the will of Susan E. Nightingale as approved by the court, and no

necessity ever existed for recording both the original and the counterpart.

As it has already appeared, the witnesses to the will of Susan E. Nightingale were interested in its provisions, and thereby, under the law, were prevented from receiving anything by virtue thereof. The other interested parties, however, did not desire to avail themselves of the legal exclusion of the witnesses, and May 1st, 1884, executed appropriate deeds and instruments to approve, ratify, and confirm the will and its provisions to said Harriet F. Nightingale for and during the term of her natural life to the same effect as if she and Horatio R. Nightingale, Junior, had not been witnesses to said will, and some other competent witnesses had been; with a covenant to save harmless said executor and trustee and his successor if he should administer upon the estate of said Susan E. according to the intent and meaning of said will, notwithstanding the fact that said interested parties were witnesses to the same; and to convey to said Harriet F. Nightingale a life estate in an undivided half part of the land and buildings and improvements thereon of which the said Susan E. Nightingale died seised and possessed, situate on College street, in said city of Providence, and between the estates of the late George M. Richmond and the Athenæum estate. Said undivided one-half part of said real estate was all the real estate whereof said Susan E. Nightingale died seised and possessed.

The aforenamed executor of the will of Susan E. Nightingale paid, out of her estate, her debts and the legacies of one hundred dollars each, as directed by said will, and thereafter died on the 26th day of June, 1885; and at the written request of said Harriet F. Nightingale, Samuel A. Nightingale, and the respondent Annie R. Warren, filed in said Municipal Court, the complainant was appointed administrator *de bonis non* with the will of said Susan E. Nightingale annexed, by decree of the said Municipal Court, on the 4th day of August, 1885.

In the year 1887 the said Samuel A. Nightingale married the respondent Frances C. Youlin, and in August, 1892, Crawford Nightingale aforesaid deceased.

Harriet F. Nightingale possessed and enjoyed the life es-

tate devised, confirmed, and conveyed to her as aforesaid until she died on the 6th day of January, 1894; and thereafter on the 25th day of the same month, Annie R. Warren, Charles H. Warren, Mary W. Phillips, John C. Phillips, Samuel C. Nightingale, Mary H. Nightingale, and Samuel A. Nightingale executed an instrument, not only to approve, ratify, and confirm the will of Susan E. Nightingale and the provisions thereof to Horatio R. Nightingale to the same extent and effect as if he had not been a witness thereto and as if some other competent person had been such witness, but also to grant, assign, set over, and convey unto said Horatio R. Nightingale all their right, title, and interest in and to that part of the estate of said Susan E. Nightingale to which he would have been entitled under said will if he had not been a witness thereto and some other competent witness had been a witness in his stead; and to indemnify said Horatio R. Nightingale as administrator if he should administer upon said estate notwithstanding his aforesaid disability; and with covenant for further conveyances if necessary.

It also appeared in evidence that the persons who executed said instrument and the complainant were all the persons interested as beneficiaries under the will of Susan E. Nightingale, or as her heirs at law and next of kin, except Anna E. Nightingale, widow of and executrix and trustee under the will of said Horatio R. Nightingale, and the trustees under the will of Crawford Nightingale aforesaid; but thereafterwards, in the months of March and April, 1894, the said widow individually, and as executrix and trustee, and the said trustees conveyed and transferred all their respective interests and the interests of said estates of Horatio R. Nightingale and Crawford Nightingale respectively in the said estate of Susan E. Nightingale to the complainant and the respondent Annie R. Warren and to the said Samuel C. Nightingale and Mary W. Phillips, respectively, said conveyances and transfers being of both the real and the personal estate, and the deed which conveyed said interest in said real estate was duly recorded, April 25, 1894.

On the 24th day of January, 1894, the complainant and the respondents Annie R. Warren, Charles H. Warren, Mary H.

Nightingale, Samuel Crawford Nightingale, Mary W. Phlilips, John G. Phillips, and Samuel A. Nightingale filed their petition in the Appellate Division of the Supreme Court in Providence County, praying that the complainant or some other suitable person might be appointed trustee under the will of Susan E. Nightingale to succeed said Horatio R. Nightingale, deceased, the trustee named in said will; and on the 27th day of January, 1894, a decree was duly entered in the matter of said petition, reciting that it appeared to the said court that all the parties interested in the trusts created by the will had joined in said petit on, and it was therein ordered, adjudged, and decreed that the complainant be and he thereby was appointed as trustee under the will of said Susan E. Nightingale, with all the powers conferred by law and the will upon the successor of the trustee named therein.

Upon the decease of said Harriet F. Nightingale the complainant, as administrator with the will of said Susan E. Nightingale annexed, paid to himself, as trustee for the said Samuel A. Nightingale the legacy of two thousand dollars as directed by said will; paid to the persons entitled thereto the remaining legacies of two thousand dollars under said will; paid over and transferred to himself as trustee for said Samuel A. Nightingale, as directed by said will, one-third of the residue of the personal estate; and paid over and transferred the remaining two-thirds of said personal estate to the persons entitled thereto according to the direction of the will. And thereafter the complainant, as trustee as aforesaid, duly paid to the said Samuel A. Nightingale, from the decease of the said Harriet F. Nightingale to the decease of the said Samuel A. Nightingale, as hereinafter stated, the income from the trust estate, that is to say, from the said legacies of one hundred dollars and of two thousand dollars, and from the said one-third of the residuary personal estate and from one-third of the real estate bequeathed and devised by the said will.

The said Samuel A. Nightingale deceased on the 29th day of April, 1906, leaving a last will and testament and two codicils thereto which were duly proved and approved by and before the said Municipal Court on the 22d day of May, 1906,

and recorded in the records of said court, in and by which said will and codicils the said testator bequeathed the residue of his personal estate after the payment of his debts and certain legacies therein bequeathed, and devised all his real estate to Henry L. Aldrich, of said Providence, absolutely and in fee simple, and appointed Stephen A. Cooke, of said Providence, and the defendant Warren R. Perce executors thereof, to whom letters testamentary thereon duly issued from the said Municipal Court. Thereafter the said Stephen A. Cooke deceased, and the defendant Warren R. Perce has ever since acted and is now acting as the surviving and sole executor of the said will. The said Henry L. Aldrich deceased in the lifetime of the said testator Samuel A. Nightingale, leaving the defendants Charles T. Aldrich, Henry L. Aldrich, and William T. Aldrich, his only sons and issue him surviving.

The heirs at law of the said Samuel A. Nightingale are the complainant and the defendant Annie R. Warren, children of the said Samuel's deceased brother Horatio R. Nightingale; the defendant Mary W. Phillips, daughter of the said Samuel's deceased brother Crawford Nightingale; and the defendants John T. Nightingale, Nina Nightingale, and Elizabeth Nightingale, grandchildren of the said Crawford Nightingale and children of the said Samuel C. Nightingale, the deceased son of said Crawford Nightingale.

The said trust estate under the said will of Susan E. Nightingale consisted, at the decease of said testatrix, of both real and personal estate; but the real estate has since been sold, and the proceeds of said sale have not been reinvested in real estate.

The questions raised for determination are, therefore:

Did the papers that were admitted to probate constitute the last will and testament of Susan E. Nightingale?

Had the Municipal Court of the city of Providence jurisdiction to admit said papers to probate as the will of Susan E. Nightingale?

What estate did Samuel A. Nightingale take?

How shall the fund in the hands of the complainant be distributed?

Concerning the first question: It has been held that an

instrument in the form of a letter was a valid will; *Cowley v. Knapp*, 42 N. J. L. 297 (1880). In *Tennele v. Hall*, 4 Comstock, 140 (1850), it was held that where a will, otherwise properly executed, refers to another paper already written, and so describes it as to leave no doubt of its identity, such paper, it seems, makes part of the will, although the paper be not subscribed or even attached. In *Gerrish v. Gerrish*, 8 Ore. 351 (1880), it was held that where the will of a testatrix, properly executed, makes a reference to, describes, identifies, and adopts the provisions of the will of her late husband, it thereby became a part of her will.

In *Newton v. Seaman's Friend Society*, 130 Mass. 91 (1881), as stated by Gray, C. J.: "If a will, executed and witnessed as required by statute, incorporates in itself by reference any document or paper not so executed and witnessed, whether the paper referred to be in the form of a will or codicil, or of a deed or indenture, or of a mere list or memorandum, the paper so referred to, if it was in existence at the time of the execution of the will, and is identified by clear and satisfactory proof as the paper referred to therein, takes effect as part of the will, and should be admitted to probate as such."·

In *Matthews v. McDade*, 72 Ala. 377, 385 (1882), Somerville, J., says: "A testator may, in his will, so refer to another instrument or paper executed by him as to constructively incorporate it therein, and the two may thus be constituted together but one instrument. This reference must be so clear and distinct as that there can be no reasonable room for mistake of intention."

In *Goods of Smartt*, 4 Notes Cas. 38 (1845), it is held that reference in a will to "a memorandum in my handwriting" is sufficient to admit the memorandum to probate as incorporated with and forming part of the will. Sir Herbert Jenner Fust says (p. 39): "Upon the fact of the paper B (the memorandum), it is quite uncertain whether or not it was in existence at the time the will was executed; if not, the paper can have no effect; but if it was, and if it is sufficiently identified to leave no doubt in the mind of the Court that it is the memorandum referred to, it must be considered as part of the will.

. . . Being referred to in the will, and having been an existing paper in his own handwriting at the time the will was executed, it must be considered as part of that will, and so must form part of the probate of the will."

Also, *In the Goods of Bacon*, 3 Notes Cases, 644 (1845), a schedule of books, referred to in a will, was admitted to probate as incorporated with and forming part of the will. And in *The Goods of A. M. Ash*, Deane & S. 181 (1856), it was said by Sir John Dodson: "These schedules are on the same sheet of paper with the will, which refers to them as in existence at the time when the will was written. They may, therefore, be considered as incorporated, and as such entitled to probate."

No doubt exists in our minds as to the existence and identity of the instruments so incorporated by apt words of reference in the paper executed by Susan E. Nightingale as her will.

The first question, therefore, must be answered in the affirmative; the papers that were admitted to probate constitute the last will and testament of Susan E. Nightingale. As Susan E. Nightingale was a resident of Providence in her lifetime, her will, after her death, was provable in the court having probate jurisdiction in that city; therefore the Municipal Court of the city of Providence had jurisdiction to admit said will to probate.

· The law laid down in *Bucklin* v. *Creighton*, 18 R. I. 325 (June 21, 1893), governs this case. There could be no closer similarity than that which exists between the two cases; both are cases of spendthrift trusts which were engrafted upon equitable life estates with remainder to the heirs of the *cestuis que trustent*. As stated by Matteson, C. J.: "In the case at bar, though the form of the gifts to the complainants in trust for the use of the *cestui*, with the direction that on his decease all the property and estate then holden in trust for his use shall be conveyed to his heirs at law, their heirs and assigns, for their own use, is such as might bring them within the rule in Shelley's case, yet the intention of the testatrix that he should take a life interest only, instead of an absolute interest, is plainly manifested, and, therefore, the rule is not to be applied.

"The estate is given to trustees for his benefit, who are

authorized, from time to time, when they may deem it necessary for his comfortable support, whether the necessity come from sickness or other cause, to appropriate from the capital or principal of the trust fund, such portion as they may think the necessity of the case requires for his support. Again, it is provided that if he shall alienate, or in any manner dispose of, or anticipate the rents, profits, interest or income, directed to be paid to him, or if by reason of his bankruptcy or insolvency, or other reason, such rents, profits, interest or income can no longer be personally enjoyed by him, but would belong to, or become vested in some other person, that, thereupon, the trust as to such rents, profits, interest or income, shall cease during the rest of his life and they shall be retained by the trustees and added to the principal of the trust estate.

"It is clear from these provisions that the purpose of the testatrix was to secure the trust estate for the benefit of the *cestui* during his life and to protect it for his enjoyment, not only against his creditors, but also against himself. This she could accomplish only by securing to him the rents, profits, interest and income, during his life, and providing against his anticipation or alienation of them. If the absolute equitable estate in the trust property had been given to him the clauses authorizing the trustees to apply the principal of the trust fund to his support, if necessity required it, and restricting his anticipation, or alienation, of the income, and providing for its forfeiture in the contingencies specified, would have been useless, or unavailing, since, having the entire equitable estate, he could have compelled a conveyance of the legal estate to himself, or his creditors could have subjected the property in the hands of the trustees to the payment of his debts."

It is unnecessary to consider the distinction that exists between executory and executed trusts, or whether the rule in equity following the rule in Shelley's case at law should have been applied to determine whether *Bucklin* v. *Creighton* was rightly decided. The rule in Shelley's case was abolished in this State, February 1st, 1896, as to deeds or wills thereafter executed: Gen. Laws cap. 201, § 6; and cap. 203, Sec. 10. For nearly fifteen years the case of *Bucklin* v. *Creighton, supra,*

has not been overruled, doubted, or denied; and as the rule in Shelley's case has been abolished, in the manner aforesaid, in this State for more than twelve years, it would serve no useful purpose to invoke its aid in the determination of the question before us. Even if we should admit that the doctrine of *Bucklin* v. *Creighton* is contrary to the weight of authority, we are still satisfied that it best subserves the purpose of carrying into effect the plain intention of the testatrix, and that spendthrift trusts ought to be considered as forming an exception to said rule. We therefore find that under the will Samuel A. Nightingale took only an equitable life interest in the trust estate.

There is no question but that the heirs of Samuel A. Nightingale are his nephews and nieces, and the issue of his deceased nephew. The fund therefore should be distributed by the trustee *per stirpes* among them.

A decree may be entered accordingly.

*Edwards & Angell,* for complainants.

*Albert Gerald,* of counsel.

*Barney & Lee,* for respondent Frances C. Nightingale.

*Comstock & Canning, and Patrick P. Curran,* for respondents Aldrich.

*Howard A. Lamprey,* for respondent, Perce, executor.

*James B. Littlefield,* for guardian *ad litem.*