# Matthews *v*. McDade.

*Bill in Equity by Remainder-men, for Sale of Lands for Partition, and Account of Rents.*

1. *Will; reference to another paper, as part thereof.*—A testator may, in his will, so refer to another instrument or writing executed by him, as to make it a part of his will, as if incorporated therein; but to have this

[Matthews v. McDade.]

effect, the reference must be so clear and distinct as to leave no reasonable ground for mistake as to his intention.

2. *Conclusiveness of probate, as to testamentary character of paper.*—A deed of trust making a partial disposition of his property, having been executed by the testator on the same day with his will, attested by the same witnesses, and admitted to probate with the will, as a part thereof, one of the executors being also made trustee in the deed; the probate is conclusive as to the testamentary character of the deed, until reversed on appeal, or successfully contested by bill in equity under statutory provisions (Code, § 2336).

3. *Execution of power.*—In the execution of a power by a donee or trustee, a direct reference to the power is not necessary, though it must not be left uncertain whether the act was done in execution of the power: it must be apparent that the transaction is not fairly or reasonably susceptible of any other interpretation, than as indicating an intention to execute the power; and this intention must be collected from all the circumstances.

4. *Same; sale and conveyance by executor and trustee; whether referred to power in will, or to void probate decree.*—Where a deed of trust, conferring on the trustee a power of sale, was admitted to probate as a part of the grantor's will, executed on the same day, and referring to the deed; and the trustee, who was also the sole acting executor, procured from the Probate Court an order of sale which was invalid and inoperative, sold the land five years afterwards, and, as executor, executed to the purchaser a deed with covenants of warranty, but did not report the sale to the Probate Court; *held*, that the sale would, *ut res magis valeat quam pereat,* be referred to the power conferred by the deed as part of the will, and not to the order of the court.

5. *Same; presumption in favor of sale, after twenty years.*—After the lapse of twenty years from such sale by the executor and trustee, during which period the purchaser held open, notorious, and uninterrupted adverse possession of the land, although the title of the remainder-men might not be barred, if the power was not legally executed; yet a presumption would arise in favor of the regularity of the sale, and the court would incline to draw inferences favorable to its validity.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The original bill in this case was filed on the 29th August, 1876, by James A. McDade and others, surviving children of Nancy E. McDade, deceased, and grandchildren of James McDade, deceased, against Alexander W. McDade and Catherine L. Matthews; and sought a sale, for partition, of certain lands, in which the complainants claimed an interest as remainder-men, under a deed of trust executed by their said grandfather, and an account of the rents received by Mrs. Matthews, who claimed under a purchase at a sale made by the said Alexander McDade, the trustee in the deed.

The deed under which the complainants claimed an interest in the lands, and a copy of which was made an exhibit to their bill, was dated May 25th, 1850, and attested by three witnesses; and it conveyed to said Alexander W. McDade, as trustee, a tract of land containing about four hundred acres, eleven negro slaves, farming utensils, &c., "in consideration of the uses and

VOL. LXXII.

[Matthews v. McDade.]

trusts hereinafter mentioned and to be performed, as well as love and affection for " the grantor's children ; " to have and to hold the said lands, negroes, and other property, unto the said Alexander W. McDade, his heirs, executors, administrators, and assigns, in trust nevertheless for the uses and purposes hereinafter mentioned ; and first, in trust to suffer and permit me, the said James McDade, to have, use, possess and enjoy all of the said property, to my own use, during my life ; and after my death, in further trust, that whereas I have made sundry advances to, and paid money for these my five children, as follows : to my daughter Henrietta Campbell, the wife of Thomas Campbell, $3,194 ; to my son, William McDade, $1,869 ; to Martha Tatum, the wife of Henry Tatum, $2,664 ; to Alexander W. McDade, $1,978 ; and to Nancy E. McDade, the wife of James McDade, $696—these several sums embracing the amounts advanced, with interest up to May 25th, 1850 ; and whereas I desire to make them equal participants of my bounty ; and whereas the property herein mentioned is intended to invest a life-estate only in my said several children, and in my daughters to their sole and separate use, free from the control, debts and contracts of their respective husbands : in further trust, therefore, to divide and distribute the said property hereby conveyed, among the said several children herein named, the said Alexander W. McDade among the number ; he retaining his part in such manner at first, charging each child with what may have been advanced and paid to or for such child or her husband (?) * will make the share, added to such advance, equal ; and the share assigned to each child, or retained, is to be held by such child for life only ; and the remainder, at the death of any child, is to vest in the heirs of the body of the deceased, or may be born within nine months after the death of the father ; * the shares attached and assigned to my daughters to be held to their sole and separate use during their respective life-times, free from the control, debts and contracts of their respective husbands. But, if any of my said children should die, without heirs of their body living at the time of their death, or may be born in nine months thereafter ; then, in such case, the share so attached to the deceased shall revert and vest in the said trustee, and estate created by this deed to be divided among the other surviving children mentioned in this deed, * and the heirs of the body of such as may have departed this life, living at the time of the death of such child so dying without heirs of their body ; to the children above named surviving, during their lives, according to the terms of this deed, and the heirs of the

---

* The reporter can only copy from the transcript, and does not know whether the evident omissions are in the original deed, or are mistakes on the part of the register.—J. W. S.

body of such as have departed this life, in fee; and to avoid any litigation in the premises, if the parties can not agree upon and make a satisfactory division, it shall be their duty to select three respectable and disinterested persons to make a division for them; but, if they can not agree upon a division, or upon the persons to make a division for them, then, on the application of them, or any one of them, to the person holding at the time the office of judge of the Probate or Orphans' Court of said county, it shall be lawful for such judge to nominate and appoint three respectable and disinterested persons; and if any of the three persons so appointed fail or refuse to act, to appoint from time to time others in the place of such as may fail or refuse to act; and the division made by the persons so appointed or agreed upon shall be final and conclusive; and the said Alexander W. McDade may, within a reasonable time after my death, as trustee herein mentioned, sell and convey said land, or any part thereof, for the purpose of making a full, fair and equal division of the same, according to the terms herein expressed. In witness whereof," &c. This instrument was proved and admitted to record as a deed, on proof by one of the subscribing witnesses, June 24th, 1850.

On the same day this deed was executed (May 25th, 1850), and in the presence of the same attesting witnesses, said James McDade made and published his last will and testament, containing the following provisions: "First, I direct all my debts to be paid, so soon as there is money enough belonging to my estate to do so. By deed of trust, bearing date with this my last will and testament, made to my son Alexander W. McDade, and signed and sealed by me in the presence of John F. Mitchell, Alexander Carter and Robert S. Wilson, the subscribing witnesses, I have set apart a portion of my (estate) property for the use and benefit of the five following named children and their heirs: Henrietta Campbell (the wife of Thomas Campbell), William McDade, Martha Tatum (the wife of Henry Tatum), Alexander W. McDade (the trustee), and Nancy E. McDade (the wife of James McDade.) In consideration of the natural love and affection which I bear to my two youngest children, not mentioned in said deed of trust—that is to say, Helen Union McDade, and Richard F. M. McDade—and to my beloved wife, Sarah McDade, I give and bequeath the following named real and personal property and estate"—namely, a plantation containing about nine hundred acres, on which he then resided, about twenty slaves, and other personal property; "also, five hundred bushels of corn, if so much may be made the present year on my prairie plantation mentioned in said deed of trust, and the entire crop of cotton that may be made the present year on my said prairie plantation. . . And it is my

[Matthews v. McDade.]

wish and desire, that all property given by me, by this my last will and testament, to my said daughter Helen U. McDade, in case she should marry, shall be held by her in her own name, for her own separate use and benefit, free from the control, debts and contracts of her husband; and if Helen and Richard, or both of them, should die, not leaving heirs of their bodies or body as the case may be, the property as their portion mentioned in this my last will and testament, I direct, is to be vested in my son, Alexander W. McDade, in accordance with and agreeable with a deed of trust which I have made, bearing date of this day, month and year, and witnessed by ———, for an equal distribution among my sons and daughters mentioned in said deed of trust, according to the terms thereof, and general directions of the same; and of such property, Helen and Richard, surviving the other, will receive a portion of the same equal with those mentioned in said trust deed. And the property set apart by this my last will and testament for my wife is to vest in Alexander W. McDade, as trustee, for the benefit of all my children, according to the terms of the deed of trust mentioned above; Helen and Richard to share, and share alike, in such property as may at the death of my wife vest in Alexander W. McDade, as trustee, &c., with those whom I have already mentioned in the deed of trust. . . I hereby appoint my wife and my son Alexander W. McDade as executors of this my last will and testament," &c.

The testator died soon afterwards, and on the 9th July, 1850, the deed of trust and the will were together admitted to probate, as and for his last will and testament, by an order and decree of the Probate Court of Montgomery. The decree admitting the papers to probate, after reciting the appearance of the adult parties by attorney, and of the infants by guardian *ad litem,* and that no one appeared to contest the probate, proceeds thus: "And it appearing that the said James McDade executed his last will and testament on two separate parcels or sheets of paper, both of which bear the same date, and are attested by the same witnesses on the same day; and John W. Mitchell, Alexander Carter, and Robert S. Wilson, subscribing witnesses to the said papers, coming into open court, and, being first duly sworn, depose and say that they saw the said James McDade signed and seal the said papers as his last will and testament, and that they signed the said papers as witnesses, in the presence of the said James McDade, at his instance and request, and in the presence of each other, and that the said James McDade was at the time of a sound and disposing mind and memory; it is therefore considered, adjudged, and decreed by the court, that the said papers, one of which refers to and recog-

[Matthews v. McDade.]

nizes the other, be admitted to probate, and established as the last will and testament of said James McDade, deceased."

On the 22d July, 1850, the widow filed her waiver of the right to letters testamentary, and her written dissent from the will, and claimed her dower and distributive interest as secured by statute; and a life-estate in one-third of all the lands was thereupon set apart and allotted to her, by the decree of the court, as her dower interest, the lands so assigned her not including any part of the prairie plantation. Letters testamentary were afterwards granted to said Alexander W. McDade (at what time the record does not show), as sole executor. On the 26th December, 1850, the executor filed his petition in said Probate Court, alleging that, in consequence of the widow's dissent from the will, "it appears that the estate of said James McDade can not be administered in conformity with his last will and testament," and asking an' order for the distribution of the slaves; and the court thereupon appointed commissioners, who divided the slaves among the parties in interest. On the 23d September, 1850, the executor filed another petition in said Probate Court, alleging that the lands belonging to the estate, which were particularly described, embracing the prairie plantation and the plantation on which the testator resided at the time of his death, "can not be equally, fairly, and beneficially divided among the said heirs and devisees thereof, without a sale," and asking an order of sale for the purpose of making division and distribution among them. Under this petition an order of sale was granted, but at what time does not appear, except inferentially from its recitals that the defendants were summoned to appear on the 5th November, 1850; and this order and decree, which is regular in all respects, and recites that the testimony taken "shows that a sale is necessary for the purpose of making a distribution among the heirs at law of said decedent," directs "the said Alexander W. McDade, executor as aforesaid," to proceed to make the sale.

On the 6th January, 1851, a report of the sale was made by the executor, stating that he had made the sale, "as executor as aforesaid," on the 18th December, 1850; and that William McDade became the purchaser at the sale of the tract of land called the prairie plantation, containing four hundred acres (being the lands involved in this suit), "at the price of $5.40 per acre, amounting to the sum of $2,160, and has complied with the terms of sale." On the return of this report, the court made an order, which is without date, in these words: " *This day* came A. W. McDade, executor of the estate of James McDade, deceased, and made a report of the sale of certain real estate belonging to said deceased; from which said report it appears that said executor," having first given due notice by pub-

lication, " proceeded to sell said lands upon the premises, on the 18th day of December, 1850; and that William McDade, at said sale, became the highest and best bidder for " the tract of land involved in this suit, " containing four hundred acres, more or less, at the price of $5.40 per acre, amounting to the sum of $2,160, and has complied with the terms of sale. It is therefore adjudged and decreed by the court, that A. W. McDade, executor as aforesaid, proceed to convey and set over to the said William McDade, his heirs and assigns, all the right, title, interest or estate, which the said James McDade had or held in and to the above-named land at the time of his death." In June, 1853, said executor made a final settlement of his accounts and a distribution of the estate, and, producing the receipts of the several heirs and distributees for the amounts due them respectively, the decrees in their favor were entered satisfied; the decree reciting that, " in consequence of the widow's dissent from the will, in connection with the peculiar and conflicting terms of the last will and testament of said James McDade, it is necessary to distribute said estate as in case of intestacy."

On the 27th December, 1855, said A. W. McDade, professing to act as executor, executed to said William McDade a deed for said tract of land, the material portions of the deed being in these words: " Know all men by these presents, that I, A. W. McDade, executor of the estate of James McDade, deceased, for and in consideration of twenty-two hundred dollars to me in hand paid by William McDade," the receipt whereof is acknowledged, " do hereby bargain, sell, enfeoff and confirm unto the said William McDade, his heirs and assigns, the following tract or parcel of land;" " and I do covenant with the said William McDade, his heirs or assigns, that I am, as executor of the estate of James McDade, deceased, lawfully seized in fee of the said premises; that I, the said A. W. McDade, executor of said estate, do relinquish all right, title and claim to said land; that I have a good right to sell and convey the same to the said William McDade, his heirs or assigns; and that I do warrant and defend the said premises unto the said William McDade, his heirs or assigns forever, against the lawful claims and demands of all persons. In witness whereof," &c. William McDade took possession of the land under his purchase from said executor, but at what time does not appear, and afterwards sold and conveyed to Geo. H. B. Matthews; and the defendant, who was the widow of said Matthews, was in possession claiming under him.

Mrs. Nancy E. McDade, the mother of the complainants, died in 1864, her children being all infants at that time; and the eldest attained his majority in April, 1875. In their origi-

[Matthews v. McDade.]

nal bill, the complainants set up the deed of trust to said A. W. McDade, as a deed; claiming that the sale to William McDade was without authority, and that they, as remainder-men on the death of their mother, were entitled to one-fifth part of the property conveyed by the deed; and asking that the lands be sold for division, and that they be paid, out of the proceeds of sale, the amount ascertained to be due to their mother, on the statement of an account among the several beneficiaries named in the deed.    Mrs. Matthews, in her answer, set up the proceedings had in the Probate Court, in the matter of the probate of the will and the sale of the land; copies of which several proceedings, as above stated, were made exhibits to her answer. She contended that the probate of the paper as a will was conclusive on all the parties interested in the estate, and alleged that the decree of the court, assuming jurisdiction of the estate as in case of intestacy, was not only rendered necessary by the widow's dissent from the will, but was rendered by the common consent and agreement of all the adult heirs; that the lands were also sold by like consent and agreement, and the order of sale was obtained because it was thought doubtful whether the executor could make a valid sale without an order of court; that the final distribution of the estate was also made by common consent of all the parties in interest, and that the complainants' mother received, on this distribution, a greater share of the assets than she was entitled to under the deed.    She set up these proceedings in the Probate Court as a plea in bar, and pleaded adverse possession and the statutes of limitations of ten and twenty years; and also demurred to the bill, for want of equity, and on account of the staleness of the demand.    The complainants afterwards amended their bill, by alleging the probate of the deed as a part of the will; but they insisted that, whether the instrument was held to be a deed or a will, the power of sale had never been legally executed, and that they were entitled to the relief prayed in their original bill.

The chancellor overruled the demurrers and the pleas, and held that the complainants were entitled to relief as prayed in their bill; that the sale of the lands by the executor was made under the probate decree, and was not a valid execution of the power, whether the instrument creating it was regarded as a deed or as a part of the will.    The defendant appeals from this decree, and here assigns each part of it as error.

CLOPTON, HERBERT & CHAMBERS, for appellant.—(1.)  The testamentary character of the deed of trust is conclusively established by its probate as a part of the will.—*Deslonde v. Darrington*, 29 Ala. 92; *Blakey v. Blakey*, 33 Ala. 611; *Herbert v. Hanrick*, 16 Ala. 581; *Peacock v. Monk*, 1 Vesey, 127;

[Matthews v. McDade.]

*Tompkins v. Ladbroke*, 2 Vesey, 591; 1 Jarman on Wills, 5th Amer. ed., 37, note 10; *Goodman v. Winter*, 64 Ala. 426. (2.) Although the Probate Court has no jurisdiction to execute a trust, it has power to declare the invalidity of a bequest creating a trust.—*Johnson v. Longmire*, 39 Ala. 146. That court had jurisdiction to make a final settlement and distribution of the funds of the estate, and did make a decree for that purpose; and that decree is final and conclusive, not having been reversed on error, nor impeached by bill in equity. If the executor erred in paying over the money to the life-tenants, without requiring security from them, the remainder-men may have recourse against him, but they have no claim on the land. (3.) The power of sale conferred on A. W. McDade was a personal trust, and did not attach to the office of executor.—*Tarver v. Haines*, 55 Ala. 503. The Probate Court then had power to order a sale of lands for distribution, if the will did not authorize the executor to sell; and a copy of the will being made an exhibit to the petition, and showing that no power of sale was given to the executor (though given to the same person as trustee), the court had authority to grant an order of sale.—*Arnett v. Bailey*, 60 Ala. 439. If, then, the sale is to be referred to the order of the court, it must be sustained as valid. (4.) But the executor's deed to William McDade does not purport to be made under any order of court, and was not executed until after five years had elapsed, and two years after the decree of final distribution; and it shows on its face that the executor acted under powers supposed to be conferred by the will, of which the deed was a part. The deed, then, must be referred to the valid power, and is a good execution of that power.—*McDonald v. McRae*, 57 Ala. 423. (5.) After the lapse of twenty years, during which the purchaser has had continuous adverse possession of the land, the court will make all reasonable presumptions in favor of the regularity of the sale.—*McArthur v. Carrie*, 32 Ala. 76–87; *Baker v. Prewitt*, 64 Ala. 551–57; *Harrison v. Heflin*, 54 Ala. 558; *McCartney v. Bone*, 40 Ala. 536.

D. S. TROY, *contra*.

SOMERVILLE, J.—A testator may, in his will, so refer to another instrument or paper executed by him as to constructively incorporate it therein, and the two may thus be constituted together but one instrument. This reference must be so clear and distinct as that there can be no reasonable room for mistake of intention.—1 Jarman on Wills (5th Amer. Ed. 1880), 37–39; *Chambers v. McDaniel*, 6 Ired. L. 226; *Peacock v. Monk*, 1 Vesey, 127.

The deed of trust, bearing date May 25, 1850, was executed

by the testator, James McDade, on the same day with his last will. The two instruments bear the same date, and are attested by the same subscribing witnesses. They both have reference to the same general subject-matter—the distribution of the testator's property—and the one expressly refers to the other. The trustee appointed to execute the one instrument, which in form is a deed of trust, is also one of the two executors appointed to execute the will. Whether these facts rendered the two instruments legally but one, and constituted their execution but a single testamentary act, in such manner as to authorize the probate of the will and the deed together as *one paper*, it is unnecessary to decide; for, even the same instrument may be sometimes construed to operate in part as a *will*, and in part as a *deed*, if the intention to this end be clear.—*Kinnebrew v. Kinnebrew*, 35 Ala. 628. It is enough for our purpose, that the Probate Court assumed jurisdiction, and, after notice to all interested parties, probated the two instruments unitedly, as the last will and testament of James McDade. Its jurisdiction in the matter was full, exclusive, and final. The power to probate a will, necessarily involves the power to decide whether the paper presented for probate is in fact *a will*, or *not a will*. Hence, it has been held, that the probate of a *forged* paper *as a will* is binding and valid until revoked, and is conclusive on collateral assailment.—*Allen v. Dundas*, 3 T. R. 129; 1 Jarman on Wills (5th Amer. Ed.), 48–53. The *testamentary character* of the paper is always, in such cases, a question of primary consideration, without the determination of which there can be no probate of it. This question was settled by the action of the Probate Court, which is final and conclusive upon all parties in interest, unless its judgment is assailed otherwise than in a mere collateral proceeding. Its validity could have have been contested afterwards only by direct appeal, or by a bill in chancery filed, under the provisions of the statute, at any time within five years after the date of probate.—Code of 1876, § 2336; *Goodman v. Winter*, 64 Ala. 410; *Hall's Heirs v. Hall*, 47 Ala. 296; *Deslonde v. Darrington*, 29 Ala. 92; *Hardy v. Hardy's Heirs*, 26 Ala 524; 1 Jarman on Wills (5th Amer. Ed. 1880), 48–53.

These views are pertinent, chiefly, in their bearing upon the execution of *a power* vested by the deed of trust in Alexander McDade, who was both trustee under this instrument, and the sole acting executor under the will. The question is, whether this power can be construed to have been properly executed, so as to affect the rights of the complainants. McDade, as trustee, had conferred on him by the testator the *power to sell* the land in controversy, within a reasonable time after the death of the testator, for the purpose of making a division among those en-

[Matthews v. McDade.]

titled. He did make a sale and conveyance of it, to one William McDade, through privity with whom the appellant claims title. We are to determine whether this sale and conveyance are referable to the power, and were intended as an *execution* of it. If so, they operate to cut off the *remainder* created in the appellees, and possession under the deed for over twenty years, with claim of adverse possession, has matured into a good title.

We take the rule as settled, that while, in the execution of a power, the donee or trustee of the power must not leave it uncertain whether or not the act done is in execution of the power, a *direct* reference to the power is never necessary in order to make the act referable to it.—2 Story's Eq. Jur. § 1062 *a*. In other words, "it is not necessary that the intention to execute a power shall appear by express terms, or recitals in the instrument. It is sufficient that it shall appear by words, acts, or deeds, demonstrating the intention."—*Ib.* § 1062 *a, note* 5; *McRae's Adm'r v. McDonald,* 57 Ala. 423. It must be apparent that the transaction in question is not fairly or reasonably susceptible of any other interpretation, than as indicating an intention to execute the power; and this intention is to be collected from all the circumstances.—*Sir Edward Clere's case,* 6 Co. R. 17; *Pomeroy v. Partington,* 3 Term R. 665.

The deed made by Alexander McDade, to William McDade, is dated December 27, 1855, and contains, it is true, no reference to the power. It is insisted, however, that this conveyance may be as well referred to *the power* conferred by *the Probate Court* upon the executor, authorizing him to sell, which he seems to have previously obtained on application to that tribunal. *It was manifestly, we think, intended as an execution of the one power, or of the other.* If referred to the will, its execution will be operative and valid. If referred to the order of the Probate Court, it will be inoperative and invalid; for it needs no argument to show, that this court had no jurisdiction, under the circumstances, to make this order of sale, which was therefore a nullity.—*McRae's Adm'r v. McDonald,* 57 Ala. 423. In such cases, the inclination of the court is, always, to refer the act to the valid power, so as to afford some field for its operation, upon the maxim, *Ut res magis valeat, quam pereat,* if this can be done consistently with other prevailing rules of construction.—*Clere's case,* 6 Co. R. *supra;* 2 Story's Eq. Jur. (Redf. Ed.) § 1062 *a,* note 5, p. 267.

The deed under consideration purports to be made by Alexander McDade, in his capacity as *executor* of James McDade. It conveys a fee-simple interest in the lands, and contains a covenant as executor, not only of his right to sell and convey, with a warranty of title, but that he is "lawfully *seized in fee*"

of the premises conveyed, *as executor* of the last will and testament of the deceased. It was, furthermore, executed more than five years after obtaining the authority of the Probate Court to sell. This fact is important, in consideration of the further circumstance, that no report of sale was made to the Probate Court, and no authority to ·convey was obtained, which could only be granted on report of the payment of the purchase-money, and confirmation of the sale by formal order of the court.—Code of 1876, §§ 2467–68. The utter absence of conformity to these statutory requirements, and the delay of five years, evince, in our opinion, a clear intention not to refer the deed to the power conferred by the Probate Court. It is persuasive of the conclusion that, after so great a lapse of time, the executor opened his eyes to the fact of the invalidity of this order, and refused, on this account, to attempt its execution.

The language of the deed evinces, on the contrary, a strong intention to refer it to the power conferred by the will—or, what is the same thing, to the power conferred by the deed of trust, which was probated, and considered as part and parcel of the will. An executor is often a trustee,—the powers of a trustee being attached, not to. the executorial office, but to the executor in his personal or individual capacity. —*Perkins v. Lewis*, 41 Ala. 649. Hence, the covenant of actual seizin in the grantor, and the conveyance by him of a fee-simple interest, as executor, in the lands in question, can be referred to nothing else than the will. As we have said, it is clearly referable to one of the two powers, and must have been intended ·as an·execution of the one or the other; and as it is obviously not intended to be referred to the void power, we are authorized to conclude that the intention, gathered from all the circumstances, was to refer it very clearly to the valid powers conferred by the will. *Id certum est, quod certum reddi potest.*

There is another view of this case in harmony with the conclusion which we have reached. More than *twenty years* have elapsed since the execution of this power, and the possession of the vendee and those claiming under him has been open, notorious, adverse, and uninterrupted since then. And while the statute of limitations can not be invoked to bar the claim of the remainder-men, if the power in question has never been so executed as to legally divest their title, yet a presumption is raised by this lapse of time, upon another principle, favorable to the repose of appellant's title. Twenty years is a period of time beyond which the courts are indisposed to permit past human transactions to be disturbed by judicial investigation. *McArthur v. Carrie's Adm'r*, 32 Ala. 75, 88; *Garrett v. Garrett*, 69 Ala. 429; *Baker v. Prewitt*, 64 Ala. 551. In *Sims v.*

*Aughtery* (4 Strob. Eq. 103), the following language was used by the Supreme Court of South Carolina : "Twenty years continued possession will raise the presumption of a grant from the State, of deeds, wills, administrations, sales, partitions, decrees, and (the chancellor has said) of almost anything that may be necessary to the quieting of title, which no one has disturbed during all that period."—*McArthur v. Carrie's Adm'r, supra*, pp. 91–93. And this court has held, that this presumption will not be defeated by infancy, coverture, or other personal disability.—*McCartney v. Bone*, 40 Ala. 536 ; *Garrett v. Garrett, supra*. Nor will its operation be suspended by causes which have been legally adjudged to suspend the running of statutes of limitation.—*Harrison v. Heflin*, 54 Ala. 552. It is in accord with the spirit of this principle that the statute intervenes to prevent any legal disability from being permitted to so operate as, under any circumstances, to authorize the probate of a will to be disturbed after the lapse of twenty years (Code of 1876, § 2338); or, in fact, to authorize any disability to extend the period of limitation beyond twenty years from the time the cause of action accrued.—Code, § 3236. It would be but a just application, we think, of this rule of presumption, to permit it to be invoked, in order to impart probability to the regular and proper execution of a power by a trustee, or an executor. It should, at least, incline the mind of the court to draw inferences from the facts favorable to the repose of titles, which may be affected by the execution of such a power. This we are disposed to do, and we need extend the principle no farther at present.

These views must operate to reverse the decree of the chancellor, and necessarily result in a dismissal of complainants' bill ; and a judgment to this effect is accordingly ordered to be rendered in this court.