# Stewart *v.* Cross.

## *Ejectment.*

(Decided November 27, 1913.   63 South. 956.)

1. *Trusts; Instrument Creating; Validity.*—A deed conveying real estate in trust providing that the proceeds should be applied to the payment of the debts of the grantor, and to the support of the grantor and his wife for life, that the grantor should continue in possession so long as he appropriated the proceeds to the payment of his debts and the support of his wife, and that on his failure to do either the trustee should take possession and hold the property subject to the trust, that on his death the trustee should convey to enumerated persons on specific contingencies, and that no part of the property except the profits should be disposed of by the grantor during his life, and that should the profits be insufficient to pay existing debts, the trustee should have authority to sell any of the property and apply the proceeds to the payment of such debt, and the trustee should be the exclusive judge of the necessity of a sale, was valid conveying to the trustee the legal title.

2. *Same; Management of Estate; Title of Purchaser.*—Where a trustee with power to sell to pay debts of the grantor as the trustee might deem necessary, and to convey to a beneficiary named, conveyed property to pay debts, grantee took the legal title reposed in the trustee, for relief against which the beneficiary had no resort except in a court of equity.

3. *Same; Conveyance; Validity.*—Where the deed of trust authorized the trustee to sell any of the property conveyed by the deed of trust that he might deem best and apply the proceeds to the debts of the grantor in the trust deed, and that the trustee should be the exclusive judge of the necessity of sale, but which failed to prescribe a particular method for effectuating the sale, and the trustee determined that a sale was necessary and made application to a court of

[Stewart v. Cross.]

equity to take jurisdiction of the trust and order a sale as might be necessary to pay the debt, a sale by such trustee after decree authorizing sale and confirming sale, was valid as the exercise of the power conferred on the trustee, and the action of the equity court was but a confirmation of the judgment of the trustee of the necessity for a sale; and a purchaser receiving deeds reciting that the trustee only conveyed as the trustee, and made no warranty of title, acquired title under the authority conferred by the deed of trust.

4. *Ejectment; Title of Plaintiff.*—Where a trustee in a deed of trust to convey property to a beneficiary on the death of the grantor, made no conveyance to such beneficiary, but attempted to exercise a power therein given to sell the land for the payment of the grantor's debt, the beneficiary could not maintain ejectment against a purchaser from the trustee, since such beneficiary was without requisite title to support ejectment.

APPEAL from Dallas Circuit Court.

Heard before Hon. B. M. MILLER.

Statutory ejectment by Carrie B. Stewart against Amelia E. Cross. From a judgment for defendant plaintiff appeals. Affirmed.

D. G. EWING, and A. LATADY, for appellant. The solution of this case necessitates the consideration of and depends upon the following proposition. First, could N. H. R. Dawson as trustee under the deed from Benjamin J. Tarver, delegate the authority to convey and the discretion imposed upon him by such deed of trust, to the chancery court, and do the proceedings in such court constitute a delegation of such authority and discretion. And second, what title did the grantees in said deed from Dawson made under the terms of and by virtue of the decree of the chancery court and at its order, get, and where was the title of said property from the date of the deed from Tarver to Dawson, as trustee? As to the first proposition, it must be answered in the negative.—Bispham's Equity 127; *Crampton v. Rutledge,* 47 South. 314; *Hinson v. Williamson,* 74 Ala. 192; *Pinney v. Werborn,* 72 Ala. 62; *Marks v. Tarver,* 59 Ala. 337; *McDonald v. McDonald,* 92 Ala. 537;

*Moses v. Macon,* 79 Ala. 564; *Creamer v. Holbrook,* 99
Ala. 52; *Taylor v. Harwell,* 65 Ala. 1; *Clay v. Gurley,*
66 Ala. 14.    The deed expressly fixes the powers and
duties of the trustee in case at bar.—*Foster v. Goree,*
5 Ala. 424; *Chambers v. Mauldin,* 4 Ala. 477; *Matthews
v. McDade,* 72 Ala. 387; *Wood v. Lake,* 62 Ala. 489; *Doe
v. Ladd,* 77 Ala. 224.    Upon the termination of the life
estate, the legal estate and the equitable merged into
one estate which was in the remaindermen, the appel-
lant here.—Bispham's Equity 88; Perry on Trusts, sec.
38; *Woodruff v. Woodruff,* 44 N. J. E. 349; *Peek v. Yell-
dell,* 17 Ala. 636.    Until the trusts of the deed are ex-
ecuted, the legal title continues in the trustee.—*Gunn v.
Barron,* 17 Ala. 743; *Greenwood v. Coleman,* 34 Ala. 150.
When the purposes of the trust have been accomplished
the estate of the trustee terminates, and the equitable
estate of the beneficial owner, if in esse, is converted into
a legal estate.—*Cherry v. Richardson,* 24 South. 573;
*Doe v. Ladd,* 77 Ala. 223; *Connell v. Cole,* 89 Ala. 384;
*Christian v. Mortgage Co.,* 92 Ala. 130; *Fox v. Stone,* 75
Ala. 265; *Schaffer v. Lairetta,* 57 Ala. 14.    In the case
at bar the plaintiff in the lower court was a remainder
cestui que trust, and her right of action accrued when
the life estate terminated, that is, when the legal title
and the equitable title merged on the death of the life
tenant.—11 Perry on Trusts, secs. 850 & 860; 11 Story's
Eq. Juris., sec. 1520; 1 Brick Dig. 698, sec. 852; *Jones
v. Shaddock,* 41 Ala. 262; 13 Am. & Eng. Enc. of Law,
720; *Bank v. Nelson,* 106 Ala. 542; *Scruggs v. Decatur
M. & L. Co.,* 86 Ala. 173; *Berry v. Bromberg,* 142 Ala.
339; *Pinney v. Werborn,* 72 Ala. 62.    Code sec. 3408 of
1907, declaring no use, trust, etc., for the mere benefit
of third persons has no application to trust provided
trustee is charged with active duties.—*Pittman v. Car-
niff,* 52 Ala. 83; *Kumpe v. Coons,* 34 Ala. 409; *Gindrat*

*v. W. Ry. Co.,* 96 Ala. 162. Wherever a trust is created, a legal estate sufficient for the execution of the trust, if possible, will be implied, and trustee takes such legal estate as is, and the extent and duration of the trustee's estate is commensurate with the object and extent of the trust.—*Robinson v. Pierce,* 116 Ala. 281; 1 Perry on Trusts, sec. 321; 28 Am. & Eng. Enc. of Law, 88 & notes; 27 Am. & Eng. Enc. of Law, 250-1 et seq.; *Wolfe v. State,* 179 Ala. 206; *Nat. Bank v. Ins. Co.,* 104 U. S. 54; *Chaffer v. Lavettla,* 57 Ala. 14. It is settled as a fundamental maxim in equity, that no act of the trustees, except a conveyance to a purchaser, for a valuable consideration, without notice, can vary or prejudice the rights of those beneficially interested.—*Thomas & Howard, Trustees v. Davis,* 6 Ala. 123; *Wormley v. Wormley,* 5 Curtis (U. S.) 469.

ARTHUR M. PITTS, and PITTS & LEVA, for appellee. If the appellant has any rights, it is not in a court of law, but in a court of equity.—*Robinson, et al v. Pierce,* 118 Ala. 273; *Cox v. Building & Trust Co.,* 161 Ala. *Goldsmith v. Eichold,* 94 Ala. 116. Even though, the decree of the court was void, after 20 years, court will refer act to the valid rather than invalid power.—*McRae, Administrator v. McDonald,* 57 Ala. 423; *Mathews v. McDade,* 70 Ala. 387. The statute of repose would keep the appellant from disturbing the interest of appellee after 20 years.—*Mathews v. McDade,* 72 Ala. 377; *McArthur v. Carrie, Admr.,* 32 Ala. 75. Where execution of trust is in doubt, or attended with difficulty, court of equity will take jurisdiction of the whole trust.—*Sellers v. Sellers,* 35 Ala. 235; *Trotter v. Blocker,* 6 Porter 269. When a court of equity takes jurisdiction of a trust on any ground, the court will assume jurisdiction for all purposes.—*Stewart v. Stewart,* 31 Ala. 207; *Wilson v.*

*Crook,* 17 Ala. 59; *Hundley v. Hundley,* 15 Ala. 91; 22 Enc. of Pleading & Practice, 62. A deed executed by a trustee, reciting his representative capacity in the body thereof, is valid, although signed by him, as an individual.—*Overby v. Head,* 68 Ga. 493; *Bayer v. Cockerell,* 3 Hansa 282; *Dial v. Moore,* 51 Mo. 689; *Boggs v. Scott,* 41 West Va., 316; *Lee v. Giles,* 24 Ga. 494; *Philibin v. Thrum,* 103 Md. 342.

McCLELLAN, J.—Statutory ejectment by appellant against appellee. Being at the time largely indebted, Benjamin J. Tarver, on 14th day of October, 1864, executed to N. H. R. Dawson a deed of trust, of which the following (omitting the signature, attestation, and acknowledgment) is a copy: "Know all men by these presents: That, for a good and sufficient consideration, I, Benjamin J. Tarver, of the county of Dallas, and State of Alabama, have granted, bargained, and sold, and by these presents do grant, bargain, sell, and convey unto N. H. R. Dawson, of said county and state, all my property and estate, real and personal, of every description whatsoever, situate in Dallas county, Alabama. To have and to hold the same upon the following trusts and limitations, viz.: That the proceeds of said property is to be applied to the payment of my just debts, now contracted, and then to the support of myself and wife, Eliza M., during our respective lives, and the profits of said estate, after the payment of my said just debts and the support of my said wife, are to be paid to me and enjoyed as I see proper, and I am to continue in possession of said property so long as I appropriate the proceeds or profits to the payment of my existing debts, and the support of my wife; but so soon as I fail to do either, then said Dawson is authorized to take actual possession of the same, and to use and hold the same, subject to the

trusts and limitations of this conveyance, and upon the further trusts and limitations at my death, to convey to my widow and my children then living, should I have any, said property and its increase, and profits then in hand, share and share alike, but should I die, leaving no children, but leaving a widow, then said Dawson is to convey one-half of said property to my widow, and one-half to my niece, Mary T. Dawson, and if my said niece dies before me, then convey the whole to my widow, and should I leave no widow surviving me, but leave children, then to convey all of said property, its increase and profits, as aforesaid, to my children, share and share alike; but should I die, leaving no widow or children alive, and said Mary T. Dawson having died before me, then to convey the whole of my property, as aforesaid, at my death, to my cousin, Fanny Tipton. No part of said property, except the profits, shall be disposed of by me during my life, and should I do so, then said N. H. R. Dawson shall have the right and power to sue for and recover the same immediately, and thereafter retain possession thereof, and to take possession of all said property at any time that I may dispose of any of it, and should the profits of my property be insufficient to pay my existing debts, then said N. H. R. Dawson is authorized hereby and empowered to sell any of the property that he may deem best, and apply the proceeds to the payment of said debts, and said N. H. R. Dawson shall be the exclusive judge of the necessity of such a sale, and the balance of my said property shall be subject to the provisions of this conveyance, as hereinbefore set forth."

Consistent with the condition stipulated in the latter part of the deed of trust, the trustee (Dawson) assumed to exercise the authority conferred on him. On February 15, 1870, the trustee filed a bill in the chancery

court of Dallas county (where the trust estate was sit-
uate), to which Benjamin J. Tarver and Eliza Tarver,
his wife, James W. Lapsley, Sarah J. Clark, Mary T.
Dawson, and Caroline M. Haden were made parties de-
fendant.  Lapsley and Clark stood in the relation of
creditors of Benjamin J. Tarver.  Mrs. Haden was the
possessor of a life estate in a part of the real estate of
the trust estate.  Mary T. Dawson, then an infant,
daughter of the trustee, held the title to an undivided
half interest, with Tarver, in a block of real estate, in
the city of Selma; Tarver's interest being subjected by
the deed to the trust thereby created.  So far as we need
state it at this time, after setting forth the relation of
the parties to the trust, or to the property thus subject-
ed to the trust, the bill averred that:   "Said Sarah J.
Clark claims that on the ——— day of ———, 1865,
the said B. J. Tarver agreed with her in writing to pay
her $500 for said debt [previously described in the bill] ;
but orator says that Tarver had no legal authority to
bind or burden the property conveyed in trust to your
orator for a larger sum than was actually and legally
due at the time of making said deed.  Orator is informed,
and believes, and so states that James W. Lapsley has,
by purchase and transfer from the original creditors,
become the owner of the rest of said claims against Tar-
ver.  The present amount of said claims or debts to the
best of orator's information is about $6,000.   *   *   *
Said B. J. Tarver also held and owned a plantation in
Dallas county of about 1,400 acres, which was levied on,
under execution, issued on some of the debts described
in the schedule marked 'Exhibit B.'  The sheriff, having
said executions in his hands, set apart 800 acres of said
plantation for a homestead, and the residence [residue],
say about 590 acres, was sold under said execution, and
bought by one P. O. Grimes,   *   *   *   who transfer-

red and conveyed the same, together with the residence
[residue] of his judgment, to said James W. Lapsley,
who now holds the same. Said B. J. Tarver has no
means of support for himself and his wife except such
as may be derived from said plantation; wherefore, it is
desirable to redeem same. There are also some choses
in action belonging to said trust estate; none of them,
however, are at present available, and the probable ulti-
mate value of them is small. Full report thereof will
be made as your honor may direct."

In the fourth paragraph of the bill this language oc-
curs: "Orator further states that it is necessary to sell
some portion of said trust estate in order to discharge
said debts, and that the half interest in the lot of land
in Selma, first described, in section 3 is the only piece
of property that would sell for enough to pay said debts,
and at the same time it will be most beneficial to dispose
of that rather than any other part of said estate, because
it brings in no revenue, being most vacant, and Mrs. C.
M. Haden, the mother of said B. J. Tarver, has consented
in writing to release her life interest in so much of said
lot as may be necessary to sell in order to pay said
debts."

In the fifth paragraph of the bill it is set forth that:
"Mary T. Dawson  *  *  *  is the Mary Dawson re-
ferred to in said deed of trust. And for a sale of the
said B. J. Tarver's half interest [in the block mentioned
before], it will be necessary to have the lot divided into
two small building lots of suitable size, and that the
same should then be divided equally  between  your
orator, as the owner of said B. J. Tarver's half interest,
and the said Mary T. Dawson. And that so much of
said lot as may be allotted to orator, as may be neces-
sary, should be sold as your honor may direct."

In the sixth paragraph of the bill this occurs: "Your orator prays your honor to take jurisdiction of the execution of the trust of said deed, and of the settlement of the same, and that your honor will make the necessary orders and decrees for the division of said lot between orator and the said Mary T. Dawson, and for the sale of so much of that which is allotted to orator as may be needed to pay said debts and the costs and expenses of the trust, and that your honor will order publication, by advertisement, to be made requiring all persons claiming to be creditors of said Tarver, on the 14th October, 1864, at the date of said deed, to present and make proof of their claims before the register of this court."

There was prayer for process and for general relief. The deed of trust was exhibited (in copy) with the bill.

The court of chancery took jurisdiction in the premises of the execution of the trusts of the deed, appointed commissioners to divide the Selma property as prayed in the bill, and effected the partition between the trustee and Mary T. Dawson, directed the ascertainment of the debts against Tarver at the date of the deed of trust, with appropriate provision for the accomplishment of that purpose, ordered the sale by the trustee of so much of the lot allotted to the trustee as was of a value sufficient to pay the expenses of the trust and the debts as ascertained and reported by the register, appropriate provision having been made for the terms, place, and notice of the sale so directed, confirmed the report of the sale which was had May 9, 1870, ordered an accounting before the register by the trustee, and the ascertainment of the correctness of the claims held by Lapsley; and in October, 1870, pursuant to a petition by the trustee alleging that the part of the lots so sold by the trustee did not produce sufficient proceeds to

pay all the debts, the court ordered the trustee to sell two lots which were then yielding no income, to pay the remaining debts. This sale was effected, reported, and confirmed. The accounting made by the trustee was regularly filed, and was passed and allowed by the court, and the cause was passed from the docket, subject to be reinstated in the event of future need.

The plaintiff (appellant) is a daughter of Benjamin J. Tarver. Her mother, the wife of Tarver, died prior to B. J. Tarver's death. Tarver died in September, 1910. The plaintiff bases her asserted right to recovery against this defendant, who claims through mesne conveyances leading back to the sale of the Selma lots by the trustee in 1870, upon the reversion or remainder created by the deed of trust to Dawson.

The court gave the general affirmative charge for the defendant.

There can be no doubt of the entire validity of the deed of trust from Tarver to Dawson. Dawson took thereunder the *legal* title to the property affected by that instrument.

There can be no doubt that the conveyance made by Dawson to the purchasers of the lots at the sales following the trustee's exhibition of his bill to and in the chancery court of Dallas county were conveyances of the trustee, *as such*, in his representative capacity, and not conveyances to Dawson individually.—*Warrior River Co. v. Ala. State Land Co.,* 154 Ala. 135, 140, 141, 45 South. 53.

Natural right in this contest, which the circumstances disclosed by the record so plainly manifests to be against the plaintiff, must be laid entirely out of view in determining this appeal; yet in so doing it may be remarked, in passing, that courts composed of persons not oblivious to the human instincts or impulses that

would justly foreshadow the righteous action or judgment of the rest of human kind are never eager to promote, though sometimes compelled thereunto by inexorable rules of law, the effectuation of manifest injustice. The fact that the proceeds of these sales made upwards of 40 years ago extinguished debts that were a charge upon the property then sold, and probably contributed to the redemption the bill of the trustee contemplated—potent as the stated fact might and should be elsewhere—cannot be a factor in the solution of this appeal.

The trusts as and when created by the deed to Dawson were active, even projecting to a point of time subsequent to the death of B. J. Tarver, for, taking the event of his death and the status at that time as the subject of the trust deed's effect and operation, the plain active duty of the repository of the legal title (assuming there had been no exercise of the power of sale vested in the trustee), viz., the trustee, was to convey to the plaintiff as the child of the grantor, Tarver. If it were yielded to plaintiff's contention that no valid exercise of the power of sale had ever been effected, it is manifest that the plaintiff could not prevail in this action of ejectment, since, under the provisions of the deed of trust, she was, when this action was brought, without the title necessary to maintain it. The affirmative charge is to be justified upon that theory.

Again, since the conveyance under which, in orderly succession, defendant claims was executed and delivered by the trustee *as such,* in pursuance of a purpose to execute one of trust created by the instrument to Dawson, the applicable doctrine, fully stated in *Robinson v. Pierce,* 118 Ala. 273, 291-295, 24 South. 984, 45 L. R. A. 66, 72 Am. St. Rep. 160, is that the grantees took legal title reposed in the trustee, for relief against which

(if to relief she was or is entitled) the cestuis que trust can alone resort to a court of equity. On this account the general affirmative charge is to be justified.

It is earnestly and at great length insisted in brief for appellant that the conveyance through which defedant derives her right, in succession, to the real estate in question, made by the trustee to the purchaser at the sale had in 1870, is void, for the reason that the power of sale and the discretion to sell were not exercised by the trustee upon whom, exclusively, it was conferred by the trust deed of 1864. In our opinion this contention is entirely untenable.

Reference to the trust instrument, quoted before, discloses that no particular *method* for effectuating the sale, if determined by the trustee to be necessary, was provided therein. The power imposed and reposed (the trust being accepted by the trustee) in Dawson as trustee was to determine the *necessity* to sell property to effect the primary purpose of paying Tarver's debts owed October 14, 1864, and, having done this, to sell property for that purpose. In both the original bill (paragraph 4, quoted ante) and in the supplemental petition filed October 11, 1870, to sell two additional lots, as well as otherwise in the progress of that cause, it was unmistakably shown that the trustee determined the then existence of the necessity the ascertainment of which the trust deed had committed to his decision. That cannot be the subject of dispute on the record before us. The single remaining inquiry, suggested by the insistence for the plaintiff, is, Did the trustee exercise the power, personally conferred on him to sell to meet the necessity he had theretofore determined existed?

A negative response to this question is mainly, if not entirely, rested upon prefatory expressions in the deed to the purchasers, to the effect that the sales were or-

dered by, reported to, and confirmed by the chancery court of Dallas in the cause styled *"N. H. R. Dawson, trustee v. B. J. Tarver, et al."* The particular convey- ances of Dawson to Callen and of Dawson to Graham expressly purport to transmit to the grantees the title of the "party of the first part," who was affirmed in the conveyance to be "N. H. R. Dawson, as trustee." In *McRea v. McDonald,* 57 Ala. 423, 428, this court pro- nounced valid a deed, which, to be valid, must have been the exercise of a power, personally reposed, to sell real estate, notwithstanding the probate decree under which the sale was effected was declared a nullity. The court there approvingly quoted this from Story: "It is not necessary that the intention to execute a power shall appear by express terms or recitals in the instrument. It is sufficient that it shall appear by words, acts, or deeds, demonstrating the intention." In *Matthews v. McDade,* 72 Ala. 377, 387, the act of selling was refer- red to the *power* conferred by the deed of trust, and not to the *power* afforded and conferred by the decree of sale entered by the probate court. Whether the *power* conferred by the deed of trust was executed was made to turn on the inquiry whether the repository of the *power*—from both sources, the deed and the court's de- cree—intended the execution of the former power, or intended by his act to merely obey the mandate of the probate court decree, and on this inquiry all the circum- stances were held to be due consideration. It was there said: "We take the rule as settled that while, in the execution of the power, the donee or trustee of the pow- er must not leave it uncertain whether or not the act done is in execution of the power, a *direct* reference to the power is never necessary in order to make the act referable to it." It was also there said: "It must be apparent that the transaction in question is not fair-

ly or reasonably susceptible of any other interpretation than as indicating an intention to execute the power, and this intention is to be collected from all the circumstances." Taking due account of the fact, in that case, that to refer the act to the decree, rather than to the deed, would destroy the conveyance to the grantee from the *executor,* it was there observed : "In such cases, *the inclination of the court is always to refer the act to the valid power,* so as to afford some field for its operation, * * * if this can be done consistently with other prevailing rules of construction." [Italics supplied.] The pertinent doctrine of this decision is not to be gainsaid. It is accepted.

With respect to the *power* conferred by the deed, what was the trustee's intention, as disclosed by "all the circumstances shown by this record," in the sale of the property conveyed by purchasers at the sales? It is to be borne in mind that the deed of trust was made a *part* of the bill filed by the trustee, and, in consequence, the provisions of the deed of trust were then and are now to be read in connection with the terms of the bill so filed. It is to be further borne in mind that the bill as filed possessed manifest equity, promotive of the proper, conservative, and protective administration of the trust *under the provisions of the deed of trust.* It sought equity's compulsion and surveillance in respect of the ascertainment of the indebtedness owed by Tarver, as was necessary to effect a leading trust purpose. It invoked equity's jurisdiction to partition the Selma block, between himself, as owner for the purpose of the trust, and his daughter, who, besides being a joint owner with the trustee, was also a contingent beneficiary under the trust instrument. It invoked, as any trustee might, under the circumstances, have done, the *direction* of the court in the fulfillment of the ob-

ligations and duties his acceptance of the trust imposed upon him, not inconsistent with power and duties established by the trust instrument. In connection with the jurisdiction so invoked, the trustee asked and received an order for the sale of the property to pay debts, so ascertained, under the processes of the court—a purpose completely consistent with the duty imposed by the trust instrument. In each instance of sale here involved, he reported his action to the court, coupled with the affirmative statement that the prices bid were fair, and that, in the trustee's opinion, the sales should be confirmed. It is to be further borne in mind that the grantor did not, in the trust instrument, undertake to suspend, in respect of the trusts he established, equity's general and inherent jurisdiction over the administration of trusts under and in accordance with the provisions of the instrument creating the trusts. Indeed, in the decree assuming the jurisdiction invoked by the bill, the court thus, in part, pronounced: "And that this court take jurisdiction of the execution of the trusts of the deed of trust, exhibited to the bill, and of the settlement of the same."

The *power*, conferred on the trustee, to determine the *necessity* to sell and the *power*, so conferred, to sell involved the exercise of judgment on the part of the trustee. In the first matter of the determination, by the trustee, of the *necessity* to sell, to effectuate a trust purpose, the trustee unmistakably so adjudged. That he assumed (to concede, for the occasion only, the utmost against the validity of his acts) by his bill an attitude of submitting the matter of necessity vel non to the judgment of the Dallas chancery court cannot be material or controlling, since that court took the identical view the trustee affirmed in his bill invoking its judgment. The effect of what the court did in that respect

was simply to confirm the trustee's judgment that the·
requisite *necessity* to sell existed. If, in the abundance··
of caution about a matter in which the trustee's judg-
ment was made exclusive and final by the charter of·
his powers and authority, the trustee invoked the judg-
ment of the court in confirmation of what he had de-
termined, and the court approved his judgment, we can-·
not conceive how a question of delegation of the trus-
tee's power could arise, for the trustee has unquestion-
ably exercised *his* judgment which, though confirmed.
by the court, was none the less the trustee's determina-
tion in the premises. If the question had been present-
ed in a way that did not comprehend the affirmation of··
the trustee's judgment of the existence of the *necessity*·
to sell to pay debts, and the court had attempted to ad-·
judge the *necessity,* without the trustee's affirmation
thereof, a very different question would be litigable.

Now, as to the act of selling. Aside from the *power*·
to determine the necessity vel non to sell, the trus-
tee's authorization, in this particular, was to sell. That:
the trustee did, in fact, *actually* sell and, in his fiduci-·
ary capacity, *actually* convey is obvious. To which——·
the power in the deed of trust or the court's decree——·
must, under the circumstances shown, his acts in sell-
ing be attributed, both being perfectly consistent with
the object of the trust in respect of the payment of·
debts?

In both conveyances by the trustee (to Callen and
Graham), the subject thereof was the title vested in the·
*trustee.* The deeds so affirm, saying: "It is expressly
contracted ["understood," in one] that said party of··
the first part [the trustee] only conveys as trustee, and
makes no warranty of title." The sale was of the trus-
tee's title, not that of Tarver. Thus the conveyances⸗
necessarily refer to the trust instrument which, alone,⸗

[Stewart v. Cross.]

conferred the trust capacity upon Dawson, and in this capacity, only, did he undertake to convey. In the premises of the deed to Graham, particular reference is made to the trust deed, "for certain purposes therein named." Both conveyances (to Callen and to Graham) recited, in substance, that the sale was had and conveyancce made by or under the order or decree of the court of chancery. This recital is manifestly true, for such was the order and decree of the court, invited by the trustee's bill to that end. The deed of trust prescribed no *method* of sale—no notice, no term, no particular part or all of the trust estate. In this respect the deed empowered the trustee to sell, leaving the *method* to his judgment, or selection. Upon his unequivocal, particular initiative and invitation the court of chancery laid out the subject of the sale—the trustee's half of the Selma block—and prescribed the terms, place, and notice of sale. The *trustee,* not an agent solely commissioned by the court, sold in conformity with the directions the trustee have invited the court to give. The trustee reported to the court, affirming that the sales should be confirmed. There is nothing in the process followed by this trustee that manifested a surrender of the *power* to sell conferred on him by the deed of trust. It is not to be presumed that, because the court ordered what he besought it to order, and confirmed what *he* did, upon his assertion of his judgment that what *he* did should be confirmed, the trustee did not exercise his judgment upon the matter the deed of trust committed to his judgment. The *method* whereby or whereunder he would sell was open to his selection, to his approval, and this he effected by invoking and observing the processes which equity most usually pursues . The fact that he invoked and received the chancery court's confirmation of what he, *as trustee,* formally affirmed as

*his* judgment in the premises, and then awaited upon its approval of the sales, did not, in our opinion, refute the fact that *he, the trustee,* in fact sold the property under the *power* brought into life by the deed of trust. The recital of the conveyances consist with this action by the trustee, for the order of the court was invited by filings made by the trustee initiating the cause, and these expressed the trustee's precedent judgment of what should be sold, when separated from joint ownership, and that the sales made by him should be confirmed. So, if it is conceded for the occasion that the *chancery court's* actions and orders in respect to the sales made to Callen and to Graham were wholly void, our conclusion is, from all the circumstances shown, that the trustee sold under the *power* to sell given him by the deed of trust. If the chancery court's action had run counter to the conclusions of the trustee, either as to the necessity to sell, for the trust purpose, or to the positive acts of the trustee in making the sale, and affecting conveyances to the purchasers, there would be afforded a strong case against the valid exercise of the *power* bestowed by the trust deed; but, as we interpret the facts and circumstances, the effort (even if assumed to be a nullity) of the court of chancery to promote and to confirm the *trustee's* acts in the premises does not suffice to establish the fact that the trustee did not intend to exercise the power of sale conferred by the deed of trust.

The judgment is affirmed.

Affirmed.

DOWDELL, C. J., and SAYRE and SOMERVILLE, JJ., concur.