ATWOOD et al. v. RHODE ISLAND HOSPITAL TRUST CO. et al.

(District Court, D. Rhode Island.   March 6, 1920.)

No. 96.

1. Wills ⬥➾490—Extrinsic evidence admissible in aid of interpretation.

Where a will directed the executors to convert testator's residuary estate into money and pay it over to a designated trustee "to be held, managed, and disposed of as a part of the principal of the estate and property held by it in trust for my life and the lives of others in the same manner as though the proceeds of such sales had been deposited by me as a part of said trust and property," extrinsic evidence *held* admissible to identify the trust, and thus to determine the meaning of the provision.

2. Wills ⬥➾671—Direction of distribution under previously created trust valid.

A provision of a will, directing the executors to sell the residuary estate and pay over the proceeds to a designated trustee, to be divided and distributed "to the same persons and in the same proportions as they are entitled to the principal·of my said trust under the terms of said trust," *held* certain and valid; it being shown that prior to execution of the will testator had executed a deed to said trustee, creating a trust under which he delivered a large part of his estate, with specific directions as to its disposition both prior to and after his death.

3. Wills ⬥➾669—Direction of distribution under previously created trust valid.

The reservation in a deed creating a trust of the right of revocation or modification, during the settlors' life, does not render uncertain or invalidate a bequest by a subsequently executed will of his residuary estate to the trustee to be added to the principal of the trust estate, where the trust was not revoked during testator's life.

In Equity.   Suit by Kate Atwood and others against the Rhode Island Hospital Trust Company, administrator c. t. a. d. b. n., and others.   Decree for defendants.

Sheffield & Harvey, of Newport, R. I., Warren H. Atwood, of Ayer, Mass., Hamilton & Eaton and Lyman K. Clark, all of Boston, Mass., for plaintiffs.

Tillinghast & Collins, of Providence, R. I., for defendants.

Edwards & Angell, Comstock & Canning and Greenough, Easton & Cross, all of Providence, R. I., and Barry, Wainwright, Thacher & Symmers, of New York City, for certain interveners.

BROWN, District Judge.   This case was before the court on defendants' motion to dismiss, and plea to jurisdiction, which were respectively denied and overruled, for reasons stated in the opinion reported in 255 Fed. 162.

The Metropolitan Museum of Art of the City of New York, by permission, has intervened as a party defendant since the date of that opinion.

The bill seeks to nullify provisions of the ninth or residuary clause of the will of the late Theodore M. Davis, of Newport, R. I.

The testator, during his lifetime, had transferred to the Rhode Island Hospital Trust Company, of Providence, R. I., securities of the value of more than $2,000,000, in trust, to hold and manage and to pay over to him the net income for his own use during his life, and

⬥➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

upon his decease to convert a sufficient amount of said trust estate into cash and pay forthwith certain sums to designated beneficiaries. The remainder of the trust estate not required for these payments and for certain specified annuities was to be held in trust for the payment of the income to Mrs. Davis and Mrs. Andrews. Upon the decease of the survivor of Mrs. Davis and Mrs. Andrews, the trustee was directed to divide the principal of the remaining trust estate into equal parts, and to pay over said parts, free of all trusts, to certain persons designated by him in the deed of trust.

As is customary in deeds of this character, establishing a voluntary trust, he reserved the right to revoke or modify, during his life, the trusts declared by the deed. During his life he gave additional instructions, in writing, to his trustee, concerning payments to be made by the trustee immediately upon his decease. As these payments have been made out of the funds deposited in trust during the testator's life, these changes do not affect the disposition of any property passing to the trustee under the residuary clause of the will.

It is a fact, therefore, that Mr. Davis, during his lifetime, had perfected a settlement in trust by the actual deposit of funds, which had been accepted in trust by the Trust Company, upon terms fully communicated to it, and fully instructing it as to the disposition of such funds, during his lifetime and after his decease.

None of these acts was testamentary in any sense, nor in any wise affected by the statute of wills; nor were the names or proportional shares of any of the beneficiaries under the trust settlement subject to modification except by acts done as stated in the final clause of the trust deed, "during my life."

[1] The plaintiffs' attack is directed against the following provisions:

"Ninth. I give, devise and bequeath all the remainder of the property, real and personal, of which I die possessed or over which I have any power of disposition, including any of the foregoing gifts which shall fail for any reason, but excepting the remainder in my real estate in said Newport after the decease of my said wife and the said Emma B. Andrews, to my said executors, or any duly appointed administrator of my estate, in trust nevertheless, to convert the whole of said property into cash as soon as reasonably possible, with power for this purpose to sell the same or any part or parts thereof at either private or public sale, and the net proceeds of such sale or sales to pay over to the said Rhode Island Hospital Trust Company to be held, managed and disposed of as a part of the principal of the estate and property held by it in trust for my life and the lives of others in the same manner as though the proceeds of such sales had been deposited by me as a part of said trust estate and property; and the receipt of said trust company shall be a full discharge to my said executors or administrators relieving them from all further liability or accountability in respect thereof."

It is argued that the provisions of the residuary clause are void for indefiniteness on their face, and, being indefinite on their face, extrinsic evidence is not admissible to explain them. To support its contention that the residuary clause on its face is indefinite, plaintiffs make the following propositions: That the words "as a part of the principal and estate held by it in trust for my life and the lives of others" do not refer to a "trust that necessarily had already, prior to the execu-

tion of his will or codicil, been created by him," but that what he was thinking of "was the trusts, whatever they might be, which should be in existence at the time of his death, having been created by him at any time prior to his death."

This concedes that there is a reference in the will to a trust and a principal which is to be in existence before the testator's death.

It is apparent that the words of the testator do not exclude a trust which may have been in existence at the date of execution of the will, August 14, 1911, or at the date of the execution of the codicil, October 4, 1911, wherein the will was confirmed.

Whether there was a trust existing before the decease of the testator is a question of fact. What the testator refers to is a matter of fact, a completed settlement in trust.

The contention of the plaintiffs that evidence cannot be received to prove the existence of this fact to which the testator refers is clearly wrong. They invoke the rules of law that relate to the incorporation in wills of other documents not executed or attested in conformity to a statute of wills. These are rules of substantive law relating to the modes of execution and formalities required for the valid expression of testamentary intention (Wigmore on Evidence, §§ 2400, 2401, 2425), and are quite distinct from the rules of evidence which relate to the admission of evidence in aid of interpretation and in determining the meaning of the words used by the testator in a duly executed will. Wigmore on Evidence, §§ 2458, 2459. Section 2459 points out the vital distinction between "intention" and "meaning," and "the contrast between the prohibitive rule applicable to the creation of an act (ante, section 2413), and the present permissive rule applicable to its interpretation."

This question is discussed in Thayer's Preliminary Treatise on Evidence, pp. 404–483. On page 422 he uses the expression, "for wills and deeds talk about extrinsic things, and these have to be identified," etc., and quotes Holmes, J., in Doherty v. Hill, 144 Mass. 468, 11 N. E. 583:

"In every case, the words used must be translated into things and facts by parol evidence."

In concluding the discussion, Mr. Thayer says, on page 483:

"While, as regards persons and things indicated by the testator, and 'every other disputed point respecting which it can be shown that a knowledge of extrinsic facts can, in any way, be made ancillary to the right interpretation of a testator's words,' a court may look at every extrinsic fact which is not excluded by the general rules of evidence, yet there is one excluding rule of evidence, namely, that not even to save a will from being void for uncertainty can 'evidence to prove intention itself' be received, unless in the case of equivocation, namely, where a person or thing is described in terms applicable, equally, to more than one.

"And this, it is believed, is the only rule of evidence included in the entire compass of the so-called parol evidence rule."

It is clear that evidence as to the trust which Mr. Davis had created during his life, whether direct evidence as to the funds deposited by him and held in trust during his life, or the documentary evidence comprising the Trust Deed and the acceptance of the terms thereof

by the trustee, and the modifying instruments, Exhibits D and E, is not evidence of any testamentary intention or testamentary act of Mr. Davis, nor is it evidence of any intention of Mr. Davis as to the disposition of that portion of his estate which he did not, before his death, settle in trust. It is evidence merely of what he had done with other property. The only testamentary expression of what he wished done with his residuary estate is found in his will. There is no uncertainty in the direction that the proceeds of the conversion into cash of the residuary estate shall be paid over to the Rhode Island Hospital Trust Company to be held, managed, and disposed of as·a part of the principal held by it in trust for the testator's life and the lives of others.

[2] It would seem that this in itself should be a sufficient statement by the testator of his intention as to the disposition of his residuary estate.

But it is said that the will does not state the terms of that trust, nor the persons for whose lives it runs, nor the beneficiaries, nor their shares. Nevertheless, it clearly states in effect that it is his will that at his death the disposition of his residuary estate shall be the same as the disposition of the estate settled in trust by him before his death. Whether he makes reference to what already has been done, or shall have been done, with other property before his death by nontestamentary acts, he has furnished exact means of determining what he desires to be done with his residuary personal estate. His reference is not to other documents, nor to any expressions of intention or wishes, but to previous actions which he has completed or shall have completed before his death, and which relate entirely to other property. When it is shown what trust was created during the testator's life, then the significance of the terms used by him is established.

In a later part of the ninth paragraph the testator uses the expression "and to divide and distribute said net proceeds to the same persons and in the same proportions as they are entitled to the principal of my said trust estate under the terms of said trust."

What are the facts relating to the trust existing at Mr. Davis's death?

The trust agreement and the final draft of the will were both submitted to Mr. Davis before the execution of either. Both were signed on the same day, August 14, 1911; the duplicate originals of the trust deed being signed before the execution of the will. The trust deed was acknowledged on August 16, and on the same day the deed, with the securities constituting the principal of the trust fund was delivered to the Rhode Island Hospital Trust Company, which, on August 17, formally in writing accepted the deposits and agreed to carry out the trust.

The document fully setting out the terms of the trust was in existence before the execution of the will, and all of its provisions definitely in the knowledge of the testator when he signed his will. Upon October 4, 1911, he duly executed a codicil, relating to his interests in certain lands in Michigan, with provisions as to the final beneficiaries,

in substantial accord with those of the trust agreement, and concluding, "And except as hereby modified I hereby confirm my said will."

It is a fact shown by extrinsic testimony that the trust settlement which was fully consummated by the delivery of the securities was continuously in existence from a date prior to the confirmation of his will by his codicil to the date of his death. This trust answers the description in the will. It is also a fact that no other trust existed during that period which did correspond to that description. The conclusion is inevitable that the trust which the testator referred to was one that he already had created before he executed his codicil, and which was a nontestamentary trust, and which he then expected to be in existence at the time of his death.

Interpreting the words of the will in the light of the facts which we have stated, we cannot doubt that the meaning which the defendant trust company finds in the words of the ninth clause of the will is the same meaning that the testator attached to these words, both when he confirmed his will and thereafter throughout his life.

The will fully expresses the testamentary intention that the residuary estate should go to the trustee of the former trust settlement.

The plaintiffs urge that the will must be read as of the date of its execution, and that at that time nothing to which the testator refers was in existence. As the trust deed was then in existence, and signed by the testator, the plaintiffs must be understood to rely upon the fact that the execution and delivery and acceptance of the document and of the trusts thereof, and the deposit of securities, were done at different dates. This seems a narrow argument to which it is probably a sufficient answer to say that these acts were all done in consummation of a perfected plan, and, though not all done on the same date, must be regarded as practically contemporaneous so far as they bear upon the meaning of the words used by the testator in his will, and so far as they bear upon the question of the identification of the trust referred to in the will. Bailey v. Railroad Co., 17 Wall. 96, 108, 21 L. Ed. 611.

[3] The fact that there was a fully completed settlement in trust both at the date of the codicil and at the testator's decease reduces the argument as to indefiniteness to a single point; that the ninth clause of the will is made indefinite by the revocation clause of the trust deed. Though the plaintiffs insist that reference to extrinsic evidence is not admissible to explain the terms of the ninth clause, their argument that the testator, in the ninth clause, does not refer to a trust existing at the date of the codicil is based principally upon the terms of the trust instrument; i. e., upon the clause which reserves to the creator of the trust a right, during his lifetime, to revoke or modify it. In fact, so essential is this evidence to the plaintiffs' theory of the case that, as a part of their affirmative case, they put in the trust deed, in order to show, not that on its face the will is uncertain, but that it becomes uncertain by the incorporation therein of the revocation clause of the trust deed. The plaintiffs urge that —

"The language of the residuary clause ties right in with the language of the revocation clause contained in the trust deed as continuously and em-

phatically as if they were all contained in the will itself, and were both parts of the same identical paragraph."

The argument that because in the trust deed the grantor reserved a right of revocation or modification he did not, in his will, or at the date of its confirmation by codicil, refer to a then existing settlement in trust is not sound. The reservation of a right to change does not destroy the actual existence of the trust settlement, nor does it afford any evidence of an intention to change or revoke it. On the contrary, the fact that after full consideration the testator executed and acknowledged it shows that its provisions were such as he then intended and desired should be in force after his death.

The plaintiffs say:

"The language, however, which he actually used in his residuary clause shows on its face that it was chosen deliberately and ex industria so as unmistakably to exclude the idea that the disposition to be made of his property should be in accordance with the provisions of the deed of trust of August 14, 1911, as it then stood," etc.

This statement is not justified. On the face of the trust instrument it is apparent that it was his present intention that it should stand during his life and after his death, or he would not have executed it. He clearly says that he desires it to stand unless or until he revokes it or modifies it. It is extravagant to say that he intended to exclude it. It is apparent that he did not mean any other trust, unless he should thereafter have created another trust.

If the residuary clause of the will and the revocation clause of the trust deed be read together, the will means the trust already created, "unless I shall do what I do not now intend; revoke it or change it." It is to continue until the happening of a condition subsequent, a revocation or substantial modification, and if that does not happen, for the full term provided in it.

As the trust was not in fact changed in any way materially affecting the disposition of the residuary estate, the will may speak either from the date of the codicil or from the date of the testator's death, with the same meaning as to the final disposition of the property under the will.

Mr. Davis, as creator of the trust, has said:

"I may change my mind, but unless I do so this is the trust which will be in existence at my death."

The testator in his will has said in effect:

"The existing trust is the one which I now mean, unless before my death I shall, by a nontestamentary act, revoke the trust."

As the condition subsequent did not happen, it hardly seems necessary to consider the possible or hypothetical case of its happening. Nevertheless, we may assume that it did happen, and consider the plaintiffs' contention that a testator may not make a testamentary provision to be determined by future acts of the testator himself.

The fundamental proposition of the plaintiffs is that—

"The testator sought to incorporate in his will any trusts which he might at any time, prior to his death, create for his life and the lives of others."

This, however, is an inaccurate statement. Assuming that he contemplated the creation of future trusts, it was clearly not his intention to create them by his will, but that they should be nontestamentary trusts fully created by him during his life. He intended to give his residuary estate to the trustee under a nontestamentary trust, to augment the fund already in its hands.

The briefs for the defendants have demonstrated, in my opinion, that even if we accept the plaintiffs' contention that Mr. Davis intended to include any trusts which he might thereafter create by complete settlements, this affords them no foundation for relief. The establishment of a new trust would not change the testator's expression of intention if they are, in fact, broad enough to include such subsequently created trusts.

Instances of testamentary gifts to be determined by future events and future acts of the testator are common.

A bequest to "such household servants as shall be in my employ at my decease." The testator himself, by subsequently employing or discharging servants, may determine the persons to take. Metcalf v. Sweeney, 17 R. I. 213, 21 Atl. 364, 33 Am. St. Rep. 864; Abbott v. Lewis, 77 N. H. 94, 88 Atl. 98.

In Stubbs v. Sargon, 2 Keen, 255, 257, 258, s. c., on appeal 3 Myl. & C. 507 (1837), was considered a bequest "in trust to dispose of and divide the same into and amongst my partners who shall be in copartnership with me at the time of my decease, or to whom I may have disposed of my business," etc. In that case reference is made to three classes of conditions: (1) Those determined by natural events; (2) those determined by acts of third persons; (3) those determined by future acts of the testator himself, all illustrations of the same principle. See, also, Dennis v. Holsapple, 148 Ind. 297, 47 N. E. 631, 46 L. R. A. 168, 62 Am. St. Rep. 526; Lear v. Manser, 114 Me. 342, 96 Atl. 240; Harriman v. Harriman, 59 N. H. 135.

The foregoing cases recognize the power of a testator to provide that his gifts shall be determined by future acts done by him in the ordinary course of his affairs, or in the management of his property, in contradistinction to being dependent upon a mere verbal declaration of intention.

The defendants also cite many cases which draw the distinction between a reference in a will to acts to be done and which are nontestamentary and mere declarations of intent which are testamentary in nature. Langdon v. Astor's Executors, 16 N. Y. 9; Lawrence v. Lindsay, 68 N. Y. 108; Moore's Case, 61 N. J. Eq. 616, 47 Atl. 731; Harris et al. v. Harris' Estate, 82 Vt. 199, 72 Atl. 912; Robert v. Corning, 89 N. Y. 255, 241, 242; Coyne v. Boyce, 78 Md. 22, 26 Atl. 1021; Blackstone's Appeal, 64 Conn. 414, 30 Atl. 48; Coggeshall v. Home for Children, 18 R. I. 696, 31 Atl. 694; Holmes v. Coates, 159 Mass. 226, 34 N. E. 190; Sanford v. Raikes, 1 Merivale, 644, 653.

The defendants cite also cases in which it has been held that a testator might make provision for a distribution according to the provisions of any will of another, thus defining and making certain the persons to whom, and the proportions in which, the testator's property

should be given. Matter of Fowles, 222 N. Y. 222, 118 N. E. 611, Ann. Cas. 1918D, 834; Matter of Piffard, 111 N. Y. 410, 18 N. E. 718, 2 L. R. A. 193; Condit v. De Hart, 62 N. J. Law, 78, 40 Atl. 776.

It is the contention of the defendants that when a testator directs that distribution shall be governed by an extrinsic act it is of no consequence whether the extrinsic act is a past act or a future act at the time the will is executed. I am of the opinion that this is sound upon authority and in reason.

The cases to which we have referred emphasize the important distinction between a reference to acts which must have been completed in the life of the testator and a reference to documents which express merely a testamentary intention. The statute of wills relates to the mode of execution of testamentary papers. It does not, however, prevent a testator from making provisions which will or will not take effect upon the occurrence of conditions subsequent to the date of execution.

The plaintiffs' contention that the present case must be controlled by the rules which prevent the incorporation in wills of unattested testamentary papers cannot be accepted. There is no reference to a testamentary paper, but a reference to a fact; and, whether past or future, if a principal was in fact in the hands of the trust company at the testator's decease, there is no difficulty in defining the objects of the testator's bounty without recourse to any other document which was intended as an expression of a testamentary intent.

The plaintiffs seem apprehensive that a will, which contains provisions that a residuary estate shall be given to the trustee of a settlement to be created during the testator's life, but subsequently to the execution of the will, may be used as a device for avoiding the requirements of the laws of Rhode Island relating to the execution of wills. It is supposed that a testator may desire to be relieved of the trouble and inconvenience of these requirements, and that he might create a trust of comparatively small amount, containing a sweeping power of modification, and at the same time make a will providing that a large estate should be disposed of as a part of the trust estate theretofore created.

It is said:

"It is this reserved power to control which constitutes the vitiating element, because in just that resides the danger of fraudulent practices which the statute of wills, successor in this respect to the statute of frauds, was enacted to prevent."

It is plain, however, that as a matter of fact Mr. Davis did nothing of the kind. If the respective size of the trust principal and of the residuary estate is of any consequence, it is evident that Mr. Davis wisely determined to make, during his life, a disposition of the bulk of his estate, and to retain, during his life, only a comparatively small portion to be disposed of during his life or by will, as he might see fit; and that what at the time of his death should remain undisposed of should go to augment the principal of the trust created during life.

He fully complied with all the formalities for executing his will, and even took the precaution that his trust settlement should be evidenced by a document executed with all the formalities required by the statute of wills of Rhode Island (chapter 254, § 13, General Laws of Rhode Island, p. 883). Christopher Fry's Will, 2 R. I. 88; Nightingale v. Phillips, 29 R. I. 175, 72 Atl. 220; Keely v. Moore, 196 U. S. 38, 25 Sup. Ct. 169, 49 L. Ed. 376; Adams v. Norris, 23 How. 353, 16 L. Ed. 539. All the safeguards against the danger of fraudulent practices which the statute of wills requires appear in the execution of both documents.

The danger of foisting upon a decedent, by fraudulent practices, a will which is not his own is an object of the statute of wills. The result of the plaintiffs' argument would be to impose upon the decedent partial intestacy, though both documents which the plaintiffs seek to combine as parts of a testamentary scheme were executed with all the solemnity required by the statute of wills. Even should we accept the argument that the testator did seek to incorporate the trust deed in his will, and assuming it to be so incorporated, there could be found in it no expression whatever of his testamentary intention respecting his residuary estate, but only a statement of what he had done with other property. A reference thereto in the residuary clause could add nothing more to the testamentary provision of that clause than the details of what had been done.

But the will, interpreted in the light of existing and completed facts, as it is well settled that it may be, is as certain in meaning as if it had incorporated a document evidencing these facts, and in the ninth clause had referred to that document instead of referring, as it does, to an established and completed trust as an external fact. But if it is a possibility that by combining a trust and a will, and subsequent acts done voluntarily, some scheme might be worked out whereby a testator could retain power to change his testamentary gifts, it is difficult to see how he could thereby work out a fraud against himself, since he always retains the right, during his life, to dispose of his property otherwise than by his will, and to nullify provisions in his will by such disposition.

But the consequences of holding that a testator may not, by his will, give property to the trustee of a trust settlement thereafter to be created by him during his life might be very serious in its effect; as would be a holding that a gift to trustees "as they are trustees," or in their capacity as trustees, must be accompanied with a statement of the terms of the trust and of the beneficiaries.

On the brief of the Metropolitan Museum of Art of the City of New York is a full discussion of the proposition that—

"The trust company is under an obligation, independent of the will, to hold the legacy in trust for the beneficiaries named in the trust agreement."

The trust company agreed in the trust agreement to carry out the trust to hold the securities, and also any other property which thereafter should be added.

It is contended that an enforceable obligation is created where the terms of a trust are stated in a formal written agreement executed by the legatee. This argument seems well supported by authority, but in view of what we have already said as to the interpretation of the ninth clause, it seems unnecessary to enter into a detailed discussion of this point.

The briefs which have been presented contain a very full presentation of the authorities, and a full discussion of the distinctions to be drawn between them. So extended is this discussion that it is impractical to attempt to set it forth in this opinion.

The plaintiffs, in my opinion, are in error both in their contention that extrinsic evidence in aid of the interpretation of the residuary clause must be excluded and in their further, and not wholly consistent, contention that the incorporation of the revocation clause of the trust deed in the residuary clause of the will makes it void for indefiniteness, or as an evasion of the statute of wills.

The intention of the testator is clear beyond a reasonable doubt; his disposition of his residuary estate was well considered, equitable, and generous, and supports the trust settlement which he so carefully perfected during his life. His wish that the Metropolitan Museum of Art, and through it the public, should profit by his Egyptian Collection and other works of art will be promoted by a disposition of his residuary estate, which will relieve, or tend to relieve, the Art Museum from an obligation to make good any deficiency in the amount which the seventh clause of his will shows that he wished to assure to the beneficiaries under the trust settlement.

The testator's disposition of his property is generous to his beneficiaries and honorable to his memory; and no sound legal or equitable principle which destroys its validity has been presented by the plaintiffs.

The bill will be dismissed.

A draft decree may be presented accordingly.