ANNETTA S. MERRILL, Appellant, *vs.* THEODORE D. BOAL
*et als.* Appellees.

AMELIE BUGNON, Appellant *vs.* SAME.

APRIL 1, 1926.

PRESENT, Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

(1)  *Wills.   Trusts.   Supplemental Instrument as Part of Will.   Animus
testandi.   Probate Courts.   Probate of Wills.*

X. by written agreement conferred upon Y. as trustee, broad powers for the
management and control of such securities and property as X. should
deliver to his trustee and pursuant to the agreement X. delivered to Y.
property to be held, managed and finally disposed of in accordance with
the terms of the trust agreement.   The instrument provided that Y.
should pay the income to X. during his life and upon his decease, after
providing for certain payments and annuities, pay the net income to the
wife of X. and another person during their joint lives and upon their
decease, to pay over the remainder to designated persons if living.   The

instrument was witnessed by two persons. As of the same date X. executed his will. Although X. had signed the trust instrument when the will was executed, it was not witnessed until two days after the will was executed. The will and trust instrument purported to dispose of the property which X. should leave at his death, substantially in accordance with a will which was in existence at the time the will and trust instrument in question were being prepared. If resort could not be had to the trust instrument to ascertain the persons and the shares which they were to take, the whole of the residuary property would pass as intestate estate.

X. later added a codicil to his will. Under the will X. gave the residue of his property to his executors in trust, to reduce to cash and to pay the net proceeds to Y. "to be held managed and disposed of as a part of the principal of the estate held by it in trust for my life and the lives of others in the same manner as though the proceeds of such sales had been deposited by me as a part of said trust estate".

X. deceased and the will and codicil were admitted to probate. After the time within which an appeal could have been taken had expired, petition was filed to have the trust instrument admitted to probate as part of the will.

*Held,* that probate courts have the power at any time after probating a will and before the estate is settled to admit to probate a supplemental instrument which should have been probated with and as a part of the will.

*Held,* further, that while the instrument was intended to and did create a valid *inter vivos* trust operating *in presenti,* and did not refer to the residuary estate mentioned in the will, the will did refer to the trust instrument with sufficient clearness to identify it, and did direct that the residue under the will be paid to the trustee to be distributed under the trust, and it was the intention of X. that the two instruments should after his death, operate together to dispose of property left by him at his decease, and having executed them to all intents at the same time and each with the required formalities and with the above intention, X. was acting *animo testandi.*

(2) *Wills. Execution. Surplusage.*

X. executed an instrument of trust; he acknowledged his signature in the presence of two witnesses who were present at the same time. One witness wrote his name to the left of that of X. and under the words "in presence of". The other wrote the ordinary acknowledgment clause, signed his name, affixed his official seal and wrote beneath his signature the words "Notary Public".

The acknowledgment of X. was taken with his consent but not at his request.

X. requested the witnesses to witness his signature which they did in his presence and in the presence of each other.

*Held,* that the unnecessary act of a certificate of acknowledgment by the witness was mere surplusage and did not affect the validity of his signature as a witness.

(3) *Wills. Animus Testandi.*

A person may act *animo testandi* without knowing that he is making a will and it is immaterial what kind of an instrument he thinks he is making

if only he manifests a clear intent to dispose of his property after his decease and observes the statutory formalities.

*(4) Wills. Animus testandi.*

When a person of testamentary capacity acting of his own free will intentionally executes with the formalities required by statute a writing which in form and substance is testamentary, *animus testandi* is usually presumed but oral evidence as to the circumstances surrounding the execution of the instrument is admissible for the purpose of showing either an absence or presence of testamentary intent.

*(5) Wills. Trusts.*

While the same instrument cannot serve to dispose of property *inter vivos* and again after the maker's death, a trust agreement designed to operate *in presenti*, and so operating can be later incorporated by reference into a will, and serve as a part thereof.

*(6) Wills. Trusts. Revocation.*

Where it was the intention of maker that two instruments, one a trust instrument and the other a will should operate together to dispose of the property left by him at his decease, the fact that the maker reserved the right in the trust instrument to change the disposition of income and principal of the trust estate, did not affect their validity.

*(7) Estoppel.*

Where an instrument is presented for the first time for probate, a petitioner for probate is not estopped from urging that it is in part a testamentary document, by reason of having made inconsistent claims in other litigation touching the subject matter, which claims were not upheld.

Stearns and Sweeney, JJ., dissenting.

Probate Appeals. Heard on exceptions of appellants and appellees and exceptions of appellees overruled. Exception of appellants to decision of justice of Superior Court dismissing appeal sustained.

Rathbun, J. The above entitled cases were tried together by a justice of the Superior Court sitting without a jury. The cases were before said court on appeal from a decree of the Probate Court of the city of Newport denying the petitions filed by said Merrill and Bugnon respectively to have a certain written instrument in the form of a trust deed from Theodore M. Davis, late of said Newport, deceased, to the Rhode Island Hospital Trust Company, admitted to probate as a part of his will in so far as said

instrument affected the disposition of his property after his death. Each case is before us on the appellant's exception to the decision of said justice dismissing the appeal and also on the exception of appellees—although said decision was in their favor—to certain rulings and a finding of said justice.

It appears that in the summer of 1911 said Davis arranged with the Rhode Island Hospital Trust Company for the latter to manage a portion of his property under a trust agreement which was afterwards reduced to writing by the attorney for the Trust Company. The written agreement, which is the instrument in question, conferred upon the Trust Company as trustee broad powers for the management and control of such securities and property as he should deliver to the trustee, and, pursuant to the agreement, he delivered to the Trust Company property of considerable value to be held, managed and finally disposed of in accordance with the terms of the trust agreement. The trust instrument provided that the trustee should pay the income from the trust property to Mr. Davis during his lifetime and, upon his decease, after making certain specified payments and providing for certain annuities for persons named, pay the net income in equal shares to Mr. Davis' wife and another person during their joint lives. The instrument further provides that after the decease of the survivor the trustee shall divide the remainder of the trust estate into as many equal parts as may be necessary, and transfer, pay over, and convey varying specified numbers of said parts to persons named, if respectively living, at Mr. Davis' decease. Mr. Davis' signature to said instrument was witnessed by two witnesses and the appellants contend that the instrument was executed not only with all the formality required by law for executing a will but also with the intention that said instrument should operate in connection with an instrument, hereinafter referred to as the will, to dispose of property which he should leave at his death. The attorney who prepared the trust instrument also drew for Mr. Davis, at the same time, another instrument, bearing the same

date, in the form of a will. Said will and trust instrument together purported to dispose of the property, which Mr. Davis should leave at his death, substantially in accordance with a will which was in existence at the time the will and trust instrument in question were being prepared. If resort cannot be had to. the trust instrument to ascertain the persons and the shares which they are to take, the whole of the residuary property must pass as intestate estate.

The appellants contend that these two instruments together constitute Mr. Davis' will. It was his intention that both instruments should be executed at the same time but the trust instrument, although in existence bearing his signature when the will was executed, was not witnessed until August 16, 1911, two days after the execution of the will. However, Mr. Davis later added a codicil to the will and the execution of the codicil, of course, amounted to a republication of the will. See *In the Goods of Truro*, 14 Wkly Rep. 976, 14 L. T. Rep. N. S. 893. By the ninth clause of the will Mr. Davis referred to the trust instrument by referring to the trust, the terms of which were contained in said instrument. By said clause he gave the residue of his property to the executors or administrators of his estate in trust to reduce to cash as soon as reasonably possible and to pay the net proceeds "to the said Rhode Island Hospital Trust Company to be held, managed and disposed of as a part of the principal of the estate and property held by it in trust for my life and the lives of others in the same manner as though the proceeds of such sales had been deposited by me as a part of said trust estate and property".

Mr. Davis deceased February 23, 1915, and thereafter the will and codicil alone were presented and duly admitted to probate by said probate court. When said petitions were filed the time within which an appeal could have been taken from the decree admitting the will and codicil to probate had elapsed.

It is elementary that a will may be comprised of two or more separate documents. Assuming for the time being

that the trust instrument might properly have been admitted to probate with the will and codicil, the question arises whether said court now has jurisdiction to probate another instrument, not in the place of the will, but as a supplemental part of the will itself.

In *Bowen* v. *Johnson*, 5 R. I. 112, in an opinion by AMES, C. J., this court held, in accordance with the generally accepted rule, that the power of our probate courts to revoke a probate once granted by them, although not expressly recognized by statute, is a "just and necessary power to be implied from their general power to 'take the probate of wills, and grant administration on the estates of deceased persons'". If without express statutory authority—and none existed when *Bowen* v. *Johnson* was decided—probate courts have jurisdiction to revoke the probate of a will, after the time for taking an appeal has passed, and probate in its place a later will *a fortiori* said courts have the power at any time after probating a will and before the estate is settled to admit to probate a supplemental instrument which should have been probated with and as a part of the will. This conclusion is amply supported by the authorities. *Newton* v. *Seaman's Friend Soc.*, 130 Mass. 91; *Schultz* v. *Schultz*, 10 Gratt. (Va.) 358; *Clark* v. *Wright*, 3 Pick. 67; *Waters* v. *Stickney*, 12 Allen 1 and cases cited.

Was the instrument executed with the formalities required by the Statute of Wills in force in Rhode Island?

The justice of the Superior Court who heard the petitions on appeal found that: "On all the facts . . . and on the law . . . the trust deed, so called, was executed with all the formalities required in this state for the execution of a testamentary instrument." By stipulation of the parties, a transcript of the oral evidence produced in the Probate Court was treated by said justice as evidence before him for his consideration. As said justice did not see and hear the witnesses testify, he was in no more favorable position than is this court in passing upon the credibility of witnesses and weighing the evidence before him. We have

therefore carefully read the transcript and examined the exhibits which were before said justice and conclude, in substance, as did said justice, that Mr. Davis acknowledged his signature to the instrument in question in the presence of two witnesses, who were present at the same time, and who thereafter at his request, in his presence and in the presence of each other witnessed his said signature. The testimony of the witnesses who testified that said signature was acknowledged and witnessed as above stated was clear and uncontradicted, and it was a question of law whether said signature was witnessed as required by the statute regulating the execution of wills.

Mr. Davis' signature was witnessed by one person who wrote his name to the left of that of Mr. Davis and under the words "In presence of:". The second witness instead of signing as did the first wrote the ordinary acknowledgment clause, signed his name, affixed his official seal and wrote beneath his signature the words "Notary Public". It appears that the acknowledgment of Mr. Davis was taken with his consent but not at his request. His request of the second witness was the same as that of the first. The appellees contend that the second witness, because of his taking the acknowledgment and signing as notary public, did not attest and subscribe the will as required by § 4303, G. L. 1923.

Said § 4303 provides that, "no form of attestation shall be necessary". Was the second person signing any less a witness because he did more than was required by statute? What he did was to sign his name with his official title and certify that Mr. Davis personally appeared before him; that Mr. Davis was known to him and known by him "to be the person executing the foregoing instrument and acknowledged the same to be his free act and deed". The authorities hold that if a person who is called upon to witness a will attaches to the instrument his official certificate of the maker's acknowledgment of the due execution thereof such unnecessary acts are mere surplusage and do not affect

the validity of his signature as a witness to the will. In *In re Bybee's Estate*, 179 Ia., 1089, 160 N. W. 900, the instrument which was finally probated as a will was in the form of a deed and the witnesses signed substantially as did the witnesses in the instrument in question. The court said: "We fail to see why the additional fullness nullifies the essential fact that Swanson declares over his signature that he saw the paper signed; that he was present and received a statement from the testator that she was signing for the purposes expressed in what she signed. It cannot be that doing more than the statute requires, and including all the essentials of what it does require, fails for not obeying the statute. The greater must include the less." See also to the same effect *Gage* v. *Gage*, 12 N. H. 371; *Payne* v. *Payne*, 54 Ark. 415; *Franks* v. *Chapman*, 64 Tex. 159; *Murray* v. *Murphy*, 39 Miss. 214; *Self* v. *Self*, (Ala.) 103 So. 591.

It is contended by the appellees that the instrument was not executed *animo testandi*.

It must be admitted that said instrument was intended to, and did, create a valid *inter vivos* trust operating *in presenti* and that the instrument does not refer to the residuary estate mentioned in the will. The will, however, does refer to the trust instrument, indirectly we admit, but with sufficient clearness so that there is, and can be, no question as to the identity of the instrument which the testator had in mind, and the will directs that the residue of the property mentioned in the will be reduced to cash and paid to the Trust Company to be finally distributed in accordance with the terms of the residuary clause of the trust instrument. As we have said, the will and the trust instrument were prepared at the same time by the same person and there can be no doubt whatever that Mr. Davis intended that the two instruments should, after his death, operate together to dispose of property left by him at his decease. The two instruments having to all intents and purposes been executed at the same time and each with the

required formalities and with the intention that the two should operate together to dispose of property left by the testator at his death, what more is required?

Said § 4303 provides that the testator shall sign the will in the presence of two or more witnesses present at the same time or acknowledge his signature thereto in a like manner "and such witnesses shall attest and shall subscribe the will in the presence of the testator  .  .  .  and no other publication shall be necessary". Perhaps it did not occur to Mr. Davis that a part of the trust instrument was a part of his will but he must have known that said instrument was to serve in a dual capacity: First, to provide for the management and distribution of the property which he placed in trust, and second, in pointing out the persons who were to take the residuary estate set out in the will and in determining the shares which they would respectively take. When a person executes at the same time two instruments with the required formalities, and with the intention that the two shall operate together after his decease to dispose of property which he left at death, and the instruments together purport so to do, he has acted *animo testandi*. A (3) person may act *animo testandi* without knowing that he is making a will and it is immaterial what kind of an instrument he thinks he is making if only he manifests a clear intent to dispose of his property after his decease and observes the statutory formalities. In *Heaston* v. *Krieg,* 167 Ind. at 112, the court said: "the *animus testandi* does not depend upon the maker's realization that the instrument he is executing is a will, but upon his intention to create a revocable disposition of his property to take effect after his death." Williams on Executors, 11th Eng. ed. at 79, contains the following: "It should be further observed that it is not necessary for the validity of a testamentary instrument that the testator should intend to perform, or be aware that he had performed a testamentary act; for it is undoubted law that, whatever may be the form of a duly executed instrument, and notwithstanding that it may be

in the form of a settlement or deed of gift or a bond, if the person executing it intends that it shall not take effect until after his death, and it is dependent on his death for its vigour and effect, it is testamentary." See also *Turner* v. *Scott,* 51 Pa. St. 126; *McBride* v. *McBride,* 26 Gratt. 476; *In re Bybee's Estate,* 179 Ia. 1089; *Sweeney* v. *Trombley,* 224 Ill. App. 562; *Barnewall* v. *Murrell,* 108 Ala. 366.

When a person of testamentary capacity, acting of his own free will, intentionally executes with the formalities required by statute a writing which in form and substance (4) is testamentary, *animus testandi* is usually presumed (See *Turner* v. *Scott* and *Barnewall* v. *Murrell, supra*) 6, but oral evidence as to the circumstances surrounding the execution of the instrument is admissible for the purpose of showing either an absence or presence of testamentary intent. Williams on Executors, 6th Am. ed. 141; *Clarke* v. *Ransom,* 50 Cal. 595; *Milam* v. *Stanley,* (Ky.) 111 S. W. 296, 17 L. R. A. N. S. 1126; *Outlaw* v. *Hurdle,* 46 N. C. 150; *Whitney* v. *Hanington,* 36 Col. 407; *Gage* v. *Gage,* 12 N. H. 371. After examining the two instruments and the facts surrounding their execution the conclusion is unavoidable that the trust instrument, although executed to operate *in presenti* as to property transferred to the trustee, was executed *animo testandi* as to the residue mentioned in the will.

It is argued by the appellees that the same instrument cannot operate both *in presenti* and as a will which takes effect at death. There is no attempt to dispose of the same property both *inter vivos* and after death. Of course the same instrument cannot serve to dispose of the same property *inter vivos* and again after the maker's death. Very frequently a trust agreement designed to operate *in presenti* —and in fact so operating—is later incorporated by reference into a will and serves as a part thereof. See *Industrial Trust Co.* v. *Colt,* 45 R. I. 334. Such trust instruments serve in a dual capacity, although when made there may have been—and in most instances probably was—no inten-

tion that the trust instrument should operate in connection with a will to dispose of property left at the death of the maker of the two instruments. Such trust instruments naturally were not executed with the formalities required in making a will. It is not contended that the instrument in question is the will of Mr. Davis; it is only a part of his will. The instrument which we have termed the will is incomplete unless coupled with the instrument in question. The authorities hold that there is "no legal objection to regarding the same instrument as partly a deed or contract and partly a will, partly for present and partly for posthumous operation". Schouler on Wills, § 369. See also Jarman on wills, 6th ed. 39; Alexander on Wills, Vol. 1, § 60. In *Gomez* v. *Higgins*, 130 Ala. 493, an instrument of co-partnership between father and son attested by two witnesses and directing how the father's interest should go in case of his death was held to be a will as well as a partnership agreement. The court at page 499 said: "There can be no question but that exhibit A was a partnership agreement between said parties, but this did not prevent it being testamentary in character also, in some of its provisions." In *Cross* v. *Cross*, 8 Q. B., Ad & El. 714, it appears that a son who was going abroad executed an instrument giving to his mother a power of attorney to manage his property "or, in the event of my death, I do hereby, in my name, assign and deliver to the said E. C. the sole claim to the before mentioned property". The court held that the instrument was a will. See also *Kinnebrew* v. *Kinnebrew*, 35 Ala. 628; *Taylor* v. *Kelly*, 31 Ala. 59; *Robinson* v. *Schly*, 6 Ga. 515; *Heaston* v. *Krieg*, 167 Ind. 101; *Reed* v. *Hazleton*, 37 Kan. 321; *Powers* v. *Scharling*, 64 Kan. 339; *Wolfe* v. *Wolfe*, 2 Irish Rep. K. B. Div. 1902, 246; *Porter* v. *Everts*, 81 Vt. 517.

By the terms of the trust instrument Mr. Davis reserved to himself the right to revoke or modify the trust at any (6) time during his life, or to annul, change or modify "any of the dispositions of income or of principal of my said trust

estate". The appellees contend that by reserving the right to change the disposition of income and principal of the trust estate Mr. Davis reserved the right to change without compliance with the Statute of Wills the persons who are to take and the shares which they are to take of the residuary property referred to in the will. We seriously doubt that he had any such intention. It is more probable that he, in making the reservation, was thinking only of the trust estate and the disposition thereof. But having the intention that the two instruments, unless modified, should regulate after his death the disposition of the property left by him at his decease, is it of any importance what his ideas were as to an effective method of modifying either of these instruments so as to change the disposition of the residuary property? Wills are ambulatory, that is, subject to revocation or change at the pleasure of the testator and many persons have made wills apparently with the belief that a provision could be stricken out or a new one inserted without complying with the statutory formalities; at least many such attempts to modify wills have been made, but such attempts do not revoke or invalidate the will, and according to the better rule, are entirely ineffectual, provided the original language remains legible. 40 Cyc. 1097, 1196. If a person in making his will attempts by specific terms to reserve the right to change the will without complying with the statutory requirements, such attempted reservation is, of course, ineffectual as a reservation but the will would not, by reason thereof, be invalid.

The appellees further contend that at least one of the petitioners is, by reason of contentions inconsistent with their present attitude made in certain litigation touching the subject matter, estopped to make their present contentions. Such inconsistent claims were not upheld. While a person who has gained an advantage in one suit by having his contentions upheld is sometimes estopped in another case from asserting the opposite to his former claim, a person is always permitted to change his contention when

he finds his former position untenable. Neither of the petitioners is estopped from urging that the trust instrument is in part a testamentary document. This is the first time that said instrument has been presented for probate and the matter is not *res adjudicata*.

All of the appellees' exceptions applying to matters involved in our consideration of the causes are overruled. The appellants' exception to the decision of said justice is sustained.

The appellees may, if they shall see fit, appear on April 9, 1926, and show cause, if any they have, why each cause should not be remitted to the Superior Court with direction to enter a decree reversing the decree appealed from and admitting to probate, as a part of the will of said Davis, the instrument in question, and with direction for further proceedings.

SWEENEY, J., dissenting. I am obliged to dissent from the holding that the trust deed offered for probate is a testamentary instrument; that it was executed *animo testandi*, and should be admitted to probate.

Mr. Davis died in 1915, and his will, with a codicil, was admitted to probate by the Probate Court of Newport, April 5, 1915. Since this time his estate has been in process of settlement under his will.

The next of kin of Mr. Davis challenged the validity of the residuary clause of the will. *Atwood et al.* v. *R. I. H. T. Co. et al.*, 264 F. 360; 275 F. 513. The Circuit Court of Appeals, First Circuit, held the residuary clause invalid, and as a result in February, 1922, two of the appellants, Merrill and Bugnon, severally petitioned the Probate Court of Newport to admit to probate said trust deed as a part of said will and codicil. The Probate Court denied the petitions September 26, 1922, and appeals were taken to the Superior Court. After trial in the Superior Court the justice thereof denied the petitions being of the opinion that the trust deed was not of a testamentary character, and was

never intended to be; that it was not executed *animo testandi*, and therefore lacked one of the necessary requirements of a testamentary instrument. Decision was entered dismissing the appeals. The appellants now seek a reversal of the decision entered in the Superior Court.

Mr. Davis was a lawyer, and practiced his profession for many years. He was a man of keen intellect, and careful in business matters. He knew the difference between a will and a trust deed. He accumulated a large fortune, and wished to be relieved of its care. After consultation and consideration he had a will and a trust deed prepared for execution by an experienced attorney.

August 14, 1911, Mr. Davis executed his will in the presence of three witnesses. The following October 4, he executed a codicil to his will, which was attested by the same witnesses.

Mr. Davis signed the trust deed August 14, 1911. He kept it in his possession for two days. Then Mr. Gardner, an officer of the Trust Company, called upon him. Mr. Davis acknowledged his signature on the trust deed to Mr. Gardner and a notary public. After these men signed the trust deed it was delivered to Mr. Gardner. At the same time Mr. Davis transferred and delivered possession of the major portion of his personal property to Mr. Gardner, for the trustee, to be held as the trust estate. The president of the Trust Company subsequently signed the trust deed.

Mr. Davis insisted that the trust deed contain a clause stating that the deposit of the trust property, and the trusts declared were made subject to the condition, that he might, at any time during his life, revoke the trusts declared and repossess himself of all the trust property, or at any time add to, annul, change or modify any of the trusts or powers created, or any of the dispositions of income or principal of the trust estate. October 5, 1911, and October 17, 1913, he exercised this power to change the beneficiaries named in said trust deed. On the latter date he cancelled a gift to Amelie Bugnon. As she is not mentioned in the will or

codicil, nor of the next of kin, she is not a person interested in the estate of Mr. Davis, and her petition to have the trust deed admitted to probate should be dismissed. *Emsley* v. *Young,* 19 R. I. 65.

This court has held that the trust deed was not a testamentary instrument. The nature of the trust deed and the will and codicil of Mr. Davis were directly involved in the equity cause of *Davis* v. *Manson et als* brought in the Superior Court. Issues of fact raised by the pleadings were framed. The ninth issue asked if the will and codicil and the trust deed and the amendments thereto, constituted one instrument in the nature of a will? After a full hearing the trial justice answered this issue "No" and found that the full legal title *in presenti* was taken by the Trust Company of all property conveyed to it under the trust deed and amendments, and that it "with the will and codicil in no sense constitute one instrument in the nature of a will". Decree was entered stating, among other things, that the trust was valid and to be carried out and executed by the trustee in accordance with the trust deed establishing said trust. On appeal to this court the decree was sustained. *Davis* v. *Manson et als.,* 102 A. 714.

This case is cited in *Merrill* v. *R. I. H. T. Co.,* 45 R. I. 276, 281, the court saying: "One of the issues in that case was as to the nature of the instrument now in question. . . . That adjudication can not be attacked collaterally in the probate proceeding. Whatever may be the outcome of that proceeding, and whatever use the petitioner may seek to make of the decree therein, if favorable to her, all of the parties hereto are bound in that collateral proceeding by the decree of the Superior Court in *Davis* v. *Manson (supra)* adjudging that the trusts, in said instrument declared, are valid *inter vivos* trusts, in accordance with the decision of this court in *Talbot* v. *Talbot,* 32 R. I. 72." Under this opinion all of the parties to the instant case (being the probate proceeding referred to) are bound by the decree entered in *Davis* v. *Manson, supra.*

It being settled that the trust deed was a valid *inter vivos* trust, and nontestamentary as to the property delivered by Mr. Davis to the trustee, this court affirmed the decree directing the payment of the trust fund to the beneficiaries entitled thereto. *Merrill* v. *R. I. H. T. Co.*, *supra*.

Having held that the trust deed was a valid *inter vivos* trust can we now say that it is a testamentary instrument? I think not. The trust deed and the will are distinct and independent instruments. Neither refers to the other. Each operated upon different property. At the time Mr. Gardner witnessed the trust deed Mr. Davis took his will and put it aside saying to Mr. Gardner, "this is the will; this is no concern of yours". Mr. Davis appointed two "friends" executors of his will instead of the trustee under the trust deed.

The trust of the personal property could have been created orally in this State. Mr. Davis as a prudent man insisted that he retain full power of revocation and modification of the trust deed; otherwise he would have lost control of the trust property. *Gobeille* v. *Allison*, 30 R. I. 525. Judge Anderson said, 275 F. 521: "Such instructions (as to change) might be given in writing or orally. . . . Indeed, the defendants concede, that oral instructions would, as matter of law, have been equally effective; that writings are of no importance, except as persuasive evidence."

Delivery of trust property is essential to constitute an *inter vivos* trust, and the trust deed could affect only the property delivered by Mr. Davis to the trustee. *Talbot* v. *Talbot*, 32 R. I. 72; *Paine* v. *Paine*, 28 R. I. 307; *Woonsocket Inst. for Savings* v. *Heffernan, Adm.*, 20 R. I. 308; *Providence Inst. for Savings* v. *Carpenter*, 18 R. I. 287; 28 C. J. 630. The trust deed provides for the payment to the beneficiaries named therein, of only the property delivered by Mr. Davis in his lifetime, to the trustee. It could not affect personal property not delivered by Mr. Davis to the trustee. It does not refer, in any way, directly or indirectly, to the will or codicil of Mr. Davis, or to his residuary

estate. Nor does it provide, or attempt to provide, for the payment or distribution of any property which might be left by Mr. Davis at his decease other than that held by the trustee. In no sense does it constitute an "instrument in the nature of a will". If Mr. Davis had revoked his will and had died intestate, could it be seriously claimed that his estate should be distributed in accordance with the terms of the trust deed? The obvious answer to this question disposes of appellants' contention.

The will does not incorporate, by reference, the trust deed. Concerning this proposition Judge Anderson said there is general agreement that the will does not incorporate by reference any existing trust instrument. 275 F. 513, 520. Judge Bingham said there is no allusion in the will to an instrument, present or future, of any kind or description. 275 F. 525; and Judge Brown said there is no reference (in the will) to a testamentary paper; but a reference to a fact. 264 F. 360, 367.

I am supported in my opinion, that the trust deed is not a testamentary instrument, by the opinion of Judge Brown in *Atwood et al.* v. *R. I. H. T. Co. et al.*, 264 F. 360. In discussing such a claim he said, among other things, "It is a fact, therefore, that Mr. Davis, during his lifetime, had perfected a settlement in trust by the actual deposit of funds, which had been accepted in trust by the Trust Company, upon terms fully communicated to it, and fully instructing it as to the disposition of such funds, during his lifetime and after his decease. None of these acts was testamentary in any sense, nor in any wise affected by the statute of wills. . . . It is clear that evidence as to the trust which Mr. Davis had created during his life . . . is not evidence of any testamentary intention or testamentary act of Mr. Davis, nor is it evidence of any intention of Mr. Davis as to the disposition of that portion of his estate which he did not, before his death, settle in trust. It is evidence merely of what he had done with other property. The only testamentary expression of what he wished done with his

residuary estate is found in his will." Judge Bingham of
the Circuit Court of Appeals, First Circuit, considering the
same case 275 F. 513, was also of the opinion that the
trust deed was not testamentary as to the residue of Mr.
Davis' estate. He said: (p. 525) "Now let us look at the
trust deed as it existed when the codicil was made and
later when Mr. Davis died, and see whether it refers to the
residue under the will or in any way undertakes to dispose
of that residue. It can be stated without fear of contra-
diction that the trust deed never at any time or in any way
referred to the residue of the estate under the will. Hence,
it is not even arguable that Mr. Davis intended to dispose
of the residue under his will by the trust deed. As the trust
deed does not undertake to dispose of the residue of Mr.
Davis' estate, it is of no consequence whether that instru-
ment, in the disposition of the *inter vivos* trust fund, is or is
not a testamentary instrument. It is not, and cannot be,
as to the residue under the will, for it does not undertake to
dispose of it. It simply disposes of the trust fund deposited
by the donor with the trustee during the donor's lifetime,
and, under the law of Rhode Island and Massachusetts,
would not be testamentary as to its disposition of that
fund." It seems to me that this statement is correct,
conclusive and unanswerable.

As it is clear that Mr. Davis intended that the *inter vivos*
trust deed should operate only upon the personal property
delivered to the trustee by him, and not upon any other
property he might leave at the time of his decease, it is not
a testamentary instrument and it was not executed *animo
testandi* by him, and should not be admitted to probate.

STEARNS, J., concurs in the dissenting opinion of
SWEENEY, J.

*Tillinghast & Collins, William R. Tillinghast, James C.
Collins,* for R. I. Hospital Trust Co., Admr., &c.

*Edward M. Burke, Dudley Phelps,* for Annetta S.
Merrill.

*Eugene A. Kingman, Elmer E. Tufts, Jr., Edwards &*
*Angell,* all of Providence, for Metropolitan Museum of Art
of N. Y. City.

*Gardner, Moss & Haslam, William W. Moss,* for Amelie
Bugnon, et al.

*Herbert A. Rice,* for certain appellants.

· *Sheffield & Harvey, William R. Harvey, William E.*
*Carnochan, Lyman K. Clark,* for appellees.